**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph KRAUSE, Defendant-Appellant.**

**No. 74–1402.**

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1975.

Rehearing Denied March 4, 1975.

---

Neal R. Sonnett, David A. Russell, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Mervyn Hamburg, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, and BELL and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

After a trial to a jury, appellant was convicted of making a false statement in violation of 18 U.S.C. § 1001 (1966)[1] and was sentenced to imprisonment for three months, followed by two years probation. Krause, the defendant below, appeals, alleging that his unsworn responses to questions propounded by a National Labor Relations Board Hearing Officer at a formal hearing did not constitute a "statement" within the meaning of 18 U.S.C. § 1001. He also claims that the trial court incorrectly refused to allow a former hearing officer to testify to the weight generally given by regional directors to unsworn statements contained in a transcript of an NLRB hearing. For the reasons enunciated below we affirm the appellant's conviction.

## I.

During February and March, 1972, representatives of the International Association of Machinists and Aero Space Workers (hereinafter referred to as "IAM") made an unsuccessful attempt to organize the employees of Air LaCarte Florida, Inc., a Miami, Florida airline food catering company. When IAM's efforts continued, Air LaCarte's president, Victor Damiano, considered, as an alternative to total opposition to unionization, the possibility of agreeing to his employees being organized by a union friendlier to him than IAM.

Thereafter officials of the United Textile Workers of America (hereinafter referred to as "UTW"), headquartered in New Jersey, were sent to Air LaCarte to attempt to obtain signatures of employees on cards evidencing a desire to hold an election on the question of representation by UTW. Many Air LaCarte employees signed cards on behalf of both unions.

On June 28, 1972, IAM filed with the regional office of NLRB a "petition for election," which, if approved, would have permitted employees of Air LaCarte to vote by secret ballot under NLRB supervision on the question of unionization under IAM. On July 25, a fact-finding hearing was conducted by the NLRB. Appellant, an international vice-president of UTW, and his attorney represented UTW as an intervenor. During the course of the hearing, the hearing officer attempted to ascertain the exact point in time a contract between UTW and the company was signed. The following exchange between the hearing officer and the appellant then occurred:

Hearing Officer: [T]he agreement referred to in this hearing was executed on behalf of the Union by Joseph Krause. Is that you, Mr. Krause?

Mr. Krause: Yes, sir.

Hearing Officer: What time of day was this drafted, do you know, sir?

Mr. Krause: Well, it was during the course of the day. We met in the afternoon and it was done around— I can't remember exactly. There was quite a bit of negotiating. Sometime around, say—we were there 'til around four or five o'clock, eight o'clock.

Hearing Officer: It was signed in the afternoon?

Mr. Krause: It was up in the evening. Yeah.

1. Title 18 U.S.C. § 1001 (1966) provides: "Whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

Hearing Officer: In the early evening?

Mr. Krause: Yes.

Hearing Officer: Between four or five o'clock to eight o'clock?

Mr. Krause: It was actually signed about eight o'clock.

Hearing Officer: On the day of June 28th?

Mr. Krause: Yes, sir.

Krause's remarks, although not under oath, were clearly made "on the record" and were included in the transcript of the hearing.

After examining the record, including the transcript, the NLRB Regional Director dismissed IAM's petition under the "contract in bar" rule which provides that a collective bargaining contract executed with one union on the same day that a petition for election is filed bars further processing of the petition, if the contract was to take effect immediately and the employer was unaware of the filing of the petition when the contract was signed.

It later appeared that UTW's contract with Air LaCarte was executed not on June 28, but on June 29, and had been back-dated. Records of the union and those of an airline, as well as appellant's own grand jury testimony, reflected that he had been in upstate New York on June 28 and had not flown to Miami, where the contract was negotiated and signed, until June 29.

On July 24, 1973, a federal grand jury returned a six-count indictment against Krause and six other individuals for crimes alleged to have been committed in the course of the union's organization of the Florida corporation. All of the defendants except Krause were ultimately acquitted of the charges against them, either by the court or the jury.

During the course of the trial, Krause's attorney attempted to introduce into evidence the testimony of Donald R. Holley, a former hearing officer of the NLRB. Krause's attorney attempted to show that unsworn testimony is not considered in the decision-making process and therefore is immaterial. Hence, Krause's answer would not have been capable of influencing the board's decision.

The court did not allow a complete examination of Holley on this point and prohibited Krause's attorney in his summation from making reference to the testimony of Holley on the subject of materiality. After due deliberation, the jury found Krause guilty of violating 18 U.S.C. § 1001, and he was sentenced on December 27, 1973.

## II.

Appellant first contends that the false statement charged to Krause is found only in the last response of his colloquy with the hearing officer:

Hearing Officer: On the day of June 28th?

Mr. Krause: Yes, sir.

Appellant then asserts that this reponse was not within the class of false statements that § 1001 was designed to proscribe.

The present 18 U.S.C. § 1001 has its origin in a statute passed almost one hundred years ago in the wake of a spate of frauds on the government. United States v. Bramblett, 348 U.S. 503, 504, 75 S.Ct. 504, 99 L.Ed. 594 (1955). The original provision clearly covered the presentation of false claims against any instrumentality of government to any officer of the government. *Id.* at 505. False statements made for the purpose of obtaining the approval of payment of any kind were also proscribed. *Id.* In 1934 the false statement section was amended so as to delete all words as to purpose and to insert "in any matter within the jurisdiction of any department or agency of the United States . . . ." The statute was presumably revised so as to reach not only false statements in connection with claims against the government but also in connection with non-monetary frauds. United States v. Gilliland, 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598 (1941).

The amendment to the statute occurred during the New Deal period when government agencies began entering the field of economic regulation. Friedman v. United States, 374 F.2d 363, 366 (8th Cir. 1967). "For a proper functioning of their regulative and reform power these agencies depended upon information supplied by individuals and corporations with which they were dealing. The giving of false information to these agencies would, of course, seriously pervert their functions, making effective regulation impossible. . . . Obviously, the immediate and primary purpose in amending the old 'fraudulent claims' statute was to curtail the flow of false information to these newly created regulative agencies." *Id.*

Thus, included within the purview of the statute were statements which involved no pecuniary loss to the government but which by their falseness perverted the function of some government agency. United States v. Gilliland, 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598 (1941). In 1948, the statute was put into its present form, the false statement provision becoming 18 U.S.C. § 1001. United States v. Bramblett, 348 U.S. 503, 508, 75 S.Ct. 504, 99 L.Ed. 594 (1955).

Courts have applied this statute to oral as well as written statements and unsworn as well as sworn statements. United States v. Beacon Brass Company, Inc., 344 U.S. 43, 46, 73 S.Ct. 77, 97 L.Ed. 61 (1952); United States v. Ratner, 464 F.2d 101 (9th Cir. 1972); United States v. Adler, 380 F.2d 917 (2nd Cir. 1967), cert. denied, 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602 (1967). Moreover, for purposes of the statute, a false statement has been deemed to have been made in a manner within the jurisdiction of the federal agency even if it was not made to the agency itself, if inevitably the agency had been deceived. United States v. Candella, 487 F.2d 1223 (2nd Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974).

Appellant correctly notes that certain statements while materially false, have been held to fall beyond the parameters of 18 U.S.C. § 1001. Several courts have held § 1001 inapplicable to statements made to government agents acting in a purely investigative capacity. *See* Paternostro v. United States, 311 F.2d 298, 302–303 (5th Cir. 1962). Although the line between "administration" and "investigation" cannot be sharply drawn, the argument has been made that this statute was intended to apply only to federal government "administration" and not intended to compel citizens to answer truthfully every question put to them in the course of a federal police or federal criminal investigation. United States v. Levin, 133 F.Supp. 88 (D.Colo. 1953).

However, appellant incorrectly relies upon United States v. Stark, 131 F.Supp. 190 (D.Md.1955) and Paternostro v. United States, 311 F.2d 298 (5th Cir. 1962). In *Stark*, the court held that negative answers given under oath to FBI agents who were investigating reports of an alleged bribery attempt were not "statements" within the statute. In *Paternostro* this court adopted the "exculpatory no" exception, holding that an essentially "no" response to Internal Revenue Service questions, during a conference which was not initiated by the defendant, did not relate to a claim by the defendant against the United States and was not a "statement" within the meaning of the statute.

We reaffirm our adherence to the *Paternostro* principle that a generally negative and exculpatory reponse made by a subject of a criminal investigation in reply to questions directed to him by investigating officers is not a crime under § 1001. However, that principle is simply not applicable to the factual situation before us. Indeed, even those courts which have most carefully restricted the scope of § 1001 in the context of government investigation have indicated that the statute does apply to positive statements which substantially impair the basic functions entrusted by

law to a government agency.[2] As we indicated in United States v. Bush, 503 F.2d 813 (5th Cir. 1974): "[T]here is a valid distinction between negative exculpatory denial of the suspected misdeed and an affirmative representation of facts peculiarly within the knowledge of the suspect not otherwise obtainable by the investigator."

■ Although appellant's false statement came in response to questioning, the entire context of his colloquy with the NLRB hearing officer indicates aggressive action on Krause's part to substantially impair the basic functions entrusted by law to the NLRB and, therefore, his conduct was of the very type § 1001 was meant to proscribe. Appellant was one of two officials representing his union at the NLRB hearing, at which he appeared as an intervenor attempting to affect the course of government action. He was the only one present who had personal knowledge of the negotiations which led to the signing of the collective bargaining contract between UTW and Air LaCarte. It was in his union's interest to convince the hearing officer that the effective date of the UTW contract was not after the date of the filing of IAM's petition. We therefore hold that Krause's statement to that effect, made on the record during the course of an administrative hearing, was within the class of statements § 1001 was meant to proscribe.

### III.

Appellant next requests a remand of the case so that Krause may present evidence and argue to the jury on the question of materiality.

■■ An essential element of the offense of making a false, fictitious, or fraudulent statement proscribed by 18 U.S.C. § 1001 is that such a statement relate to a material fact. United States v. Jones, 464 F.2d 1118, 1121 (8th Cir. 1972); Brethauer v. United States, 333 F.2d 302 (8th Cir. 1964). In determining whether a false statement is material, the test is whether it has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made. Blake v. United States, 323 F.2d 245, 246 (8th Cir. 1963); Gonzales v. United States, 286 F.2d 118, 122 (10th Cir. 1960).

■ Virtually without exception, materiality has been held to be a matter of law. See, e. g., United States v. Ivey, 322 F.2d 523 (4th Cir. 1963), cert. denied, 375 U.S. 953, 84 S.Ct. 444, 11 L.Ed.2d 313 (1963); Weinstock v. United States, 97 U.S.App.D.C. 365, 231 F.2d 699 (D.C.Cir. 1956). Nevertheless, in the case before us, the judge charged the jury as to the standard for materiality and repeatedly referred to materiality as a jury question. But the judge excluded examination of Donald R. Holley on the question

2. In Paternostro v. United States, 311 F.2d 298, 305 (5th Cir. 1962), the court noted that the appellant made no statement relating to any claim on his behalf against any agency of the United States, nor did he "aggressively and deliberately initiate any positive or affirmative statement calculated to pervert the legitimate functions of Government." The court in United States v. Stark, 131 F.Supp. 190, 205 (D.Md.1955), indicated that the purpose of § 1001 is "to protect the government from the affirmative or aggressive and voluntary actions of persons who take the initiative, or, in other words, to protect the government from being the victim of some positive statement . . . which has the tendency and effect of perverting its normal proper activities." Finally, the court in the United States v. Bedore, 455 F.2d 1109 (9th Cir. 1972) held that § 1001 "was not intended to embrace oral, unsworn statements, unrelated to any claim of the declarant as to a privilege from the United States or to a claim against the United States, given in response to inquiries initiated by a federal agency or department, except, perhaps where such a statement [would] substantially impair the basic functions entrusted by law to that agency."

We similarly distinguish United States v. Bush, 503 F.2d 813 (1974, 5th Cir.), where § 1001 was held inapplicable to defendant's statement to Internal Revenue Agents. There the statement was essentially an "exculpatory no" as to possible criminal activity, the agents aggressively sought the statement, and there was a high likelihood that the appellant was under suspicion at the time the statement was taken and yet was not warned of this possibility.

of whether a regional director can consider unsworn testimony in making his decision. The judge also indicated his intention to charge the jury that statements made by a person who appears before a hearing officer of the NLRB need not be sworn in order to be considered by the regional director. Since Krause's statement cannot be material unless it was—or could have been—considered, the judge effectively decided the question of materiality as a matter of law. Appellant now asks us to remand this case in order to enable him to argue to the jury that Krause's statement was not and could not have been considered by the regional director and therefore was not material. We decline to do so.

■■■ Since materiality on this record was a matter of law, the district judge acted properly in excluding testimony and argument to the jury as to whether Krause's statement was considered. Moreover, we do not believe his conclusion that the statement need not. be sworn to be considered—and therefore that Krause's statement was material as a matter of law—is erroneous.

Appellant correctly points out that § 102.66(a) of the Rules and Regulations of the NLRB (29 CFR 102.66(a)(1974)) specifies that "[w]itnesses shall be examined orally under oath." However, when Krause's colloquy with the hearing officer was read into the record at trial, all parties conceded—at appellant's insistence—that Krause was not a witness at the hearing. Hence, since Krause was not a witness, the requirements for witnesses' testimony would appear to be irrelevant to the disposition of this case.

Moreover, 29 CFR § 102.68 states that the "record in the proceedings shall consist of . . . the stenographic report of the hearing and of any oral argument before the regional director . . .." The regional director issues a decision only "[a]fter a review of the entire case." 29 CFR 101.21(b); *see also* 29 CFR 102.67(b). The Rules and Regulations of the NLRB do not specify that the regional director must consider only sworn testimony in making his decision.

In fact, he may rule on objections to elections entirely upon administrative investigation, and there need be no formal hearing at all. *See* 29 CFR § 101.21(a). Krause's statement, while not sworn, was clearly part of the "record," since the hearing officer, prior to his colloquy with Krause, advised all present that he was going "back on the record." Since Krause's statement was part of the record, it could be considered by the regional director and it was therefore "capable of influencing" the director's decision. As such, it was material.

For the reasons set forth above, the judgment of the district court is

Affirmed.