**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William Leonard KAY,**
**Defendant-Appellant.**

**No. 75–1677.**

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1977.

Randy Taylor, Dallas, Tex., for defendant-appellant.

Frank D. McCown, U.S. Atty., Fort Worth, Tex., Judith A. Shepherd, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before AINSWORTH and RONEY, Circuit Judges, and ALLGOOD, District Judge.

ALLGOOD, District Judge:

Appellant was convicted by a jury on two counts of using a fraudulently obtained credit card to obtain goods and services

having a retail value greater than five thousand dollars, in violation of 15 U.S.C. § 1644. Kay received concurrent sentences of four years on each count. The issues raised on this appeal are whether there was sufficient evidence to support the verdict on both counts and whether the trial court's instruction that a representation made to a credit card company is material if a "reasonably prudent credit company would require [the representation] before issuing a credit card" renders the conduct proscribed by the statute uncertain and the statute vague. A brief account of the facts is necessary to consider these contentions.

Count One related to the misuse of a Diner's Club card. In February of 1971, Diner's Club, Inc., received an application from the appellant, William L. Kay. The application stated that Kay was the "owner" of New Era Printing and that his yearly income was from $10,000–$13,000. Kay signed the application below a paragraph which stated, among other things, that "[e]ach cardholder . . . agrees to be responsible for all charges" made on the card.

From April, 1971 through December, 1971, charges on this card were kept below $20.00 and were paid off regularly. Then in January, 1972, defendant charged $3,532.35; in February, $13,277.71; the March, 1972 billing showed an ending balance due of $19,248.46. Of this amount, approximately $14,250 represented charges for airline tickets, with restaurant and other subsistence charges making up the balance. The card was picked up on February 22, 1972.

Count Two concerns an American Oil Company Torch Club credit card which Kay applied for in July of 1972. The application stated that Kay's business address was 9877 Brockbank, Suite 130, and his annual income was in excess of $9,500. The application was signed by the appellant under certain paragraphs which stated that the "[b]uyer agrees to pay American . . . ." either the balance owed within 25 days or the balance plus a finance charge if not paid within 25 days.

Between August, 1972 and January, 1973, charges on the card were nominal and regular payments were again made. In February, 1973, defendant charged $7,919.53 on the card; in March, $35,338.32 was charged, bringing the total balance owed to around $45,000.

Each of the representations made on the applications relating to the appellant's ownership interest in New Era, income, and business address, were false in some respect. Representatives of Diner's Club and American Oil, however, testified that the cards would probably have been issued had the true facts been known.

■ Appellant argues that, because the companies would have issued the cards in spite of the false statements, these misrepresentations could not have been material, a necessary element in proving fraud in the obtaining of the cards. However, the Government's theory, which was evidently found as fact by the jury, was that appellant misstated his intention to pay for the charges at the time he applied for the cards. Clearly, these companies would not have issued the cards had they known of appellant's intent not to pay and we therefore find the misrepresentations here material. *United States v. Krause*, 507 F.2d 113 (5th Cir. 1975).

Appellant also complains of the charge which defines a material fact as one which a "reasonably prudent credit company would require before issuing a credit card." It is contended that this instruction allows the jury to convict where no representation was in fact required by the company or made by the applicant and would require the applicant to guess at what information should be supplied. The effect, appellant urges, is to make the standard of criminal conduct unknown and therefore the statute vague in violation of due process.

■ It is conceivable that the charge may broaden the scope of § 1644 beyond permissible limits and it should have been limited to misstatements, half-truths and omissions of matters fairly raised by the questions in the applications. In the in-

stant case, however, both companies in fact requested a representation as to the appellant's intention to pay the charges incurred, and the jury found this intention to have been misrepresented. Any error, therefore, was harmless beyond a reasonable doubt. See *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Finally, appellant challenges the sufficiency of the evidence that the cards were fraudulently *obtained* rather than simply misused after having been properly obtained. Viewing the evidence in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1940), we cannot say that it was unreasonable for the jury to conclude that Kay intended not to pay the charges at the time he applied for the cards. The evidence revealed a remarkable similarity in the pattern on both cards of charging nominal amounts for several months and then suddenly and grossly abusing the credit extended to him. While the Government's position is somewhat stronger with respect to the abuse of the second card, the intent not to pay at the time of the first application may reasonably be inferred from the appellant's subsequent course of conduct. *United States v. Cochran*, 499 F.2d 380 (5th Cir. 1974), cert. denied 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825; *United States v. Rodriquez*, 474 F.2d 587 (5th Cir. 1973); *United States v. Goodwin*, 470 F.2d 893 (5th Cir. 1972), cert. denied 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691. The verdicts on both counts are therefore supported by sufficient evidence and these convictions must be affirmed.

RONEY, Circuit Judge, dissenting:

I respectfully dissent. The only substantial issue of fact in this case is whether Kay "fraudulently obtained" the two credit cards involved. The Court holds that the jury could have found that when Kay obtained the cards, he intended not to pay the substantial charges that he would make against the cards several months after issuance. His failure to disclose this intention amounted to fraud.

In convicting on this theory, the jury was charged that the evidence would have to show that Kay obtained the cards by misrepresentation or concealment of a material fact. The court then made the charge to which the defendant takes exception: "A fact is material if it is a fact that a reasonably prudent credit company would require before issuing a credit card." Although the majority admits that such charge *might* impermissibly broaden § 1644, in my judgment it clearly does so. Although we do not have to decide the issue here, I have little doubt that a statute which made it a crime to conceal from a credit card company a "fact that a reasonably prudent credit company would require before issuing a credit card" would be unconstitutionally vague.

The defects are obvious. First, such a statute would leave to conjecture a standard of conduct that lends itself to specificity. Second, varied credit card application forms clearly indicate that even credit companies do not agree on what they should prudently require, even if Congress might have some undisclosed specific standard in mind for such a statute. Third, such a statute would leave the determination to individual juries of what a prudent credit company would require, thus letting the crime vary from jury to jury. Fourth, the grand jury and the petit jury could use different standards so that a defendant might stand convicted by a petit jury of acts with which he had not been charged by the grand jury.

Significantly, there is no evidence whatsoever in this case about the requirements of prudent credit companies. Kay's jury received no evidence by which it could determine if what he concealed was what a prudent credit company would require. To the contrary there is positive evidence that the minor misstatements Kay made on his application would not have deterred these two companies from issuing the cards.

The majority of this panel holds the charge to be harmless beyond a reasonable doubt. This cannot be so, however, because the Court posits its holding as to evidence

sufficiency on the fact that Kay intended not to pay the charges. Neither company asked Kay whether he intended to pay the charges. The Diners Club application states that Kay "agrees to be responsible for all charges." And he is, of course, responsible. He has never denied that. The Torch Club application agrees that all purchases charged under the card "is indebtedness of buyer." The charges are his indebtedness. He has never denied that. He agreed to pay them in one of two ways. Kay has broken these agreements. For that he is legally liable. But at no place on either application is Kay asked to give his state of mind.

Hornbook contract law holds that where a contract is clear, a state of mind is irrelevant to its enforcement. The credit companies asked for, and obtained, legally enforceable agreements with Kay. The crucial act for which Kay stands convicted, however, is failing to tell the companies that in his mind he did not intend to fulfill his agreement. A reasonably prudent company, even a reasonably imprudent company, might not issue a card to an applicant who did not intend to pay, unless it thought the applicant available, solvent and legally responsible so that it could collect in any event. The agreement after all does carry a generous rate of interest on unpaid balances which are rather easily collectible through legal process against substantial borrowers.

In any event, on analysis, a charge that permits the jury to find guilt on concealment of a fact that a prudent credit company would require becomes the keystone to Kay's conviction. If the concealed fact is intent, this charge is not harmless at all. I would hold that this charge misconstrues the statute under which Kay was charged and injected reversible error into his trial.