UNITED STATES of America, Appellee,

v.

John H. LOMAX, Appellant.

No. 78–1638.

United States Court of Appeals, Tenth Circuit.

Submitted Feb. 15, 1979.

Decided May 14, 1979.

James P. Buchele, U. S. Atty., Topeka, Kan., and John Oliver Martin, Asst. U. S. Atty., Kansas City, Kan., for appellee.

Robert E. Jenkins, Jenkins, Way, Turner & Vader, Kansas City, Kan., for appellant.

Before PICKETT, McWILLIAMS and DOYLE, Circuit Judges.

PICKETT, Circuit Judge.

Frederick L. Williamson and John H. Lomax were charged in a two count indictment, the first count of which was for the fraudulent use of a stolen Mobil Oil Company credit card, in violation of 15 U.S.C. § 1644(a),[1] and the second count for the transportation in interstate commerce of the same credit card, in violation of 15 U.S.C. § 1644(b). Williamson pleaded guilty to the first count and testified for the government. Lomax was convicted on Count I and acquitted on Count II. The principal contention on appeal is that the evidence is insufficient to establish that the use of the Mobil credit card by Williamson and Lomax was "a transaction affecting commerce" as required by the statute.

The government offered evidence to show that Mobil Oil Company had issued a credit card to Williamson's mother which she occasionally authorized her son to use. Williamson and Lomax were cousins and were together almost daily. By prearrangement, while in the mother's home, Lomax engaged her in conversation while Williamson surreptitiously obtained the credit card from her purse. Thereafter, the two jointly made twelve purchases at Mobil filling stations, all except one in the State of Kansas, using the stolen credit card. The purchases were typical filling station credit card transactions, mostly for automobile tires which were later sold and the money divided between Williamson and Lomax. The original invoices for the purchases were sent to the Mobil credit card center in Kansas City, Missouri, where they were obtained by a Mobil investigator, produced at the trial, and received in evidence as exhibits. The purchases totaled more than $1,000 over a period of less than one year, and they constitute the basis for Count I of the indictment.

The credit card system, such as that used by Mobil, generally involves a three-party arrangement consisting of the issuer of the credit card, the card holder, and numerous merchants and retailers. By virtue of the credit card the merchant or retailer agrees to extend credit to the card holder. When a credit card purchase is completed the merchant or retailer requires the card holder to sign an invoice or credit card ticket describing the purchase and its value. These invoices or tickets are forwarded to the issuer and the merchant or retailer is paid or given credit for the total amount involved. The issuer then proceeds to collect from the purchaser according to the terms stated on the invoice, of which the purchaser has a copy.

In recent years the use of credit cards throughout the United States has reached enormous proportions. It has been estimated that losses occasioned by their fraudulent use extends into the millions of dollars.[2] In 1970, Congress, cognizant of credit

---

1. Section 1644(a) states:

   Whoever knowingly in a transaction affecting interstate or foreign commerce, uses or attempts or conspires to use any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain money, goods, services, or anything else of value which within any one-year period has a value aggregating $1,000 or more;

   . . . . .

   shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. Referring to the extent of credit cards in use in the United States and the resulting fraud losses, Justice White said in his dissent in *United States v. Maze*, 414 U.S. 395, 416, 94 S.Ct. 645, 656, 38 L.Ed.2d 603 (1974):

   . . . In this era of the "cashless" society, Americans are increasingly resorting to the use of credit cards in their day-to-day consumer purchases. Today well over 300 million credit cards are in circulation, and annual charges exceed $60 billion. In 1969 alone, 1.5 million credit cards were lost or stolen, resulting in fraud losses exceeding $100 million. 115 Cong.Rec. 38987 (1969). Current estimates of annual credit card fraud losses are put as high as $200 million. Cleveland, Bank Credit Cards: Issuers, Merchants,

card frauds throughout the United States and foreign countries, sought to provide a remedy by enacting 15 U.S.C. § 1644, which made the fraudulent use of credit cards totaling $5,000 or more in one year punishable by a fine of not more than $10,000 or five years' imprisonment, or both. In 1974, Section 1644 was rewritten for the purpose of liberalizing. federal assistance to cope with this rapidly expanding problem. The total value of property received to constitute a violation was reduced from $5,000 to $1,000, and the imprisonment period increased to ten years.

In *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), the Supreme Court considered a credit card transaction similar to the instant case, except that the indictment was brought under the mail fraud statute, 18 U.S.C. § 1341. The Court held that the wording of the mail fraud statute was such that the ordinary completed credit card transaction was not a violation of that statute.[3] In its discussion, however, the Court referred to Section 1644 and its broader provisions relating to transactions "affecting interstate commerce." The same reference was made in both dissents filed in the case. This court has recently recognized the power of Congress to provide for criminal punishment under the commerce clause of the Constitution, "even though the effect on interstate commerce may be *de minimis*." *United States v. Schwanke, Huggins and Collins*, 598 F.2d 575 (10th Cir. 1979). See also *United States v. Sweet*, 548 F.2d 198 (7th Cir.), cert. denied, 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977); *United States v. Mikelberg*, 517 F.2d 246 (5th Cir. 1975), cert. denied, 424 U.S. 909, 96 S.Ct. 1104, 47 L.Ed.2d 313 (1976).

Proof that there was an effect on interstate commerce is critical because it is jurisdictional. *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Although the legislative history of

Section 1644 and its successor, Section 1644(a), is scanty, and we have found no case where the issue was confined to the interstate transportation of credit card invoices, we are, however, convinced that Congress, when considering Section 1644, was well aware of the credit card system in the United States and its problems, as well as the effect on interstate travel. The language of the statute demonstrates that Congress intended to use its broadest constitutional power to provide a useful tool for punishment of any acts affecting interstate commerce through the fraudulent use of credit cards. *United States v. Malatesta*, 583 F.2d 748, 754 (5th Cir. 1978); *United States v. Green*, 494 F.2d 820, 826 (5th Cir.), cert. denied, 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280 (1974). Consequently, we hold that the interstate movement of credit card invoices or tickets issued after credit card purchases supplies the requirement of Section 1644(a).

■ The trial judge instructed the jury that one of the essential elements of the offense charged was "a transaction affecting interstate commerce." After a definition of the term "transaction" the jury was told that its function was limited to a determination as to the existence of a transaction as defined in the statute, and that whether it had an "effect on interstate commerce" was a question of law to be determined by the court. Although the instructions on the issue of interstate commerce are not a model of clarity, the evidence as to the interstate movement of the credit card invoices was not in dispute. Consequently, there was no prejudicial error. *United States v. Mikelberg, supra.*

■ As a witness for the prosecution, Williamson related the activities of him and Lomax in connection with the use of his mother's credit card. He also testified on direct examination that he had previously stolen two of his mother's government

and Users, 90 Banking L.J. 719, 729 (1973). Under the result reached by the majority, only those credit card frauds exceeding $5,000 covered by 15 U.S.C. § 1644 will be subject to federal criminal jurisdiction.

See also Note 2 of Justice White's dissent.

**3.** This court reached the same conclusion in *United States v. Lynn*, 461 F.2d 759 (1972).

checks and cashed them after forging her endorsement. He had not been convicted for those crimes. On cross-examination, counsel for Lomax sought to introduce the original checks into evidence. The witness having admitted the theft of the checks and the forgery of his mother's endorsement thereon, their acceptance into evidence would have been needless. The court did not abuse its discretion in rejecting the cumulative evidence; furthermore, no substantial right of Lomax was affected. Fed. R.Evid. 103(a), 403, 608(b); *Hamling v. United States*, 418 U.S. 87, 127, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Haynes*, 554 F.2d 231 (5th Cir. 1977); *United States v. Estell*, 539 F.2d 697 (10th Cir.), cert. denied, 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592 (1976).

Affirmed.