UNITED STATES of America

v.

Charles KASPER, Seymour Gray.

Crim. A. No. 78–364.

United States District Court,
E. D. Pennsylvania.

Jan. 24, 1980.

Peter F. Vaira, U. S. Atty., James D. Coleman, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

John. C. Marston, Van Sciver & Marston, Cornwells Heights, Pa., Gilbert J. Scutti, Marroletti, Dickstein & Scutti, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Defendants Charles Kasper ("Kasper") and Seymour Gray ("Gray") were both named in five counts and each named in three other counts of an eleven count indictment charging violations of three aspects of 15 U.S.C. § 1644, which prohibits the fraudulent use of credit cards. They are both charged with fraudulently transporting stolen and fraudulently obtained credit cards in interstate commerce and with conspiring to do so in violation of 15 U.S.C. § 1644(b); in addition, Kasper is charged in Count Six with using a fraudulently obtained credit card in transactions affecting interstate commerce to obtain goods and services valued in excess of $1,000 in violation of 15 U.S.C. § 1644(a).

Defendants, moving to dismiss all counts of the indictment except Count Two, argue that the acts with which they are charged do not constitute offenses under the credit card statute, or if they do, that the statute is unconstitutionally vague as applied to the facts of the instant case. The defendants have submitted to the Court a motion to dismiss all counts but Count Two on a stipulation of agreed facts (Stipulation, Paper Filed # 10). The parties have also stipulated as to the facts for trial if the Court denies defendants' motions to dismiss (Stipulation, Paper Filed # 11). Prior to allow-

ing these stipulations to be filed, the Court, proceeding by analogy to the Rule 11 Plea Colloquy, made inquiry of the defendants under oath to be sure that they understood this procedure and agreed to it.

The gravamen of the facts stipulated for purposes of the motions is that credit cards were obtained by the original cardholders without the intent to defraud the issuing companies, sold or given to Kasper and Gray with the knowledge of the persons to whom the cards were originally issued that Kasper and Gray would use the cards to make charges without paying for them, and then reported as lost or stolen by the original cardholders. The government claims that the schemes constitute violation of 15 U.S.C. § 1644(a) (Count Six) and § 1644(b) (all other Counts)[1] because the cards, bought or received with the fraudulent intent to make charges without paying for them, were "fraudulently obtained" within the scope of the statute. In opposition, the defendants claim that the cards were neither fraudulently obtained from the issuer by the original cardholder nor fraudulently obtained from the cardholders by defendants and, since the cards were given or sold by the cardholders rather than stolen from them, the credit cards were not "fraudulently obtained" within the scope of the statute.[2]

The *fraudulent intent* of the defendants on these facts is not at issue; they obtained credit cards intending to use them to obtain goods and/or services without paying for them. The issue is whether or not the cards were also *obtained by fraud*. The govern-

ment presumably concedes that defendants did not fraudulently obtain the cards from the *cardholders*; the defendants bought or received the cards from cardholders who were not deceived as to the plan to charge goods and not pay for them (Stipulation # 1, 3, 5, and 7; Paper Filed # 10). The government argues that the cards were fraudulently obtained from the card issuers, the holders being bailees of the issuers because the issuers required the original holders to agree in each instance that the cards remained the property of the issuer to be returned on demand.

■ A credit card gives the holder the privilege of charging items at establishments associated with the issuer; *Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974). The statute contemplates that a holder may authorize another to use a card; 15 U.S.C. § 1602(*l*). The card, evidence of that privilege, remains the property of the issuer to be returned on demand when the privilege is revoked. The defendants obtained from the cardholders what they had—the privilege of charging items at each company's associated establishments as evidenced by its credit card which remained the property of the issuer to be returned on demand. The card issuer's right to demand a card's surrender does not convert an obtaining with fraudulent intent from an assenting cardholder to a fraudulent obtaining from a non-assenting issuer. The credit cards were not fraudulently obtained from the issuers because they were not obtained from the issuers at all. On the facts as

---

1. "§ 1644. Fraudulent use of credit cards; penalties . . .

   (a) Whoever knowingly in a transaction affecting interstate or foreign commerce, uses or attempts or conspires to use any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain money, goods, services, or anything else of value which within any one-year period has a value aggregating $1,000 or more; or

   (b) Whoever, with unlawful or fraudulent intent, transports or attempts or conspires to transport in interstate or foreign commerce a counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card knowing the same to be counterfeit, ficti-

tious, altered, forged, lost, stolen, or fraudulently obtained; . . .."
15 U.S.C. § 1644 (1976).

2. As to Count Two the parties do not agree whether or not the credit card was stolen, and if it were, whether Kasper knew it. If the Court were to find that the other credit cards were "fraudulently obtained," the card in Count Two would also be "fraudulently obtained" and whether it had been stolen and Kasper knew it would be irrelevant. But since the Court finds that the other credit cards were not "fraudulently obtained," a credibility issue remains as to Count Two. However, Count Two is not before the Court at this time.

stipulated, defendants have not "fraudulently obtained" credit cards within the meaning of 15 U.S.C. §§ 1644(a) or (b).

■ The fallacy of the government's argument is that it confuses or equates "fraudulently obtained" and obtaining with "fraudulent intent." Fraudulent obtaining and fraudulent intent are two separate and distinct elements of this offense. The requirement of a false act distinct from a fraudulent intent is implicit in the texts of §§ 1644(a) and (b), which state "fraudulent intent" and "fraudulently obtained" as separate elements. It is an elementary rule of statutory construction that Congress would not have used different phrases had it not intended different meanings. *See, Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979).

Courts which have examined the meaning of "fraudulently obtained" in § 1644 have uniformly found some deceitful or false action by the obtainer with regard to the one from whom the card was actually obtained. *United States v. Chapman*, 591 F.2d 1287 (9th Cir. 1979) (false statements of financial status on application for credit cards); *United States v. Kay*, 545 F.2d 491 (5th Cir. 1977), *cert. denied*, 434 U.S. 833, 98 S.Ct. 119, 54 L.Ed.2d 94 (1977) (defendant made false representations on applications for credit cards, including a false representation that he intended to pay for charges); *United States v. Mikelberg*, 517 F.2d 246 (5th Cir. 1975), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1104, 47 L.Ed.2d 313 (1976) (false information as to names, jobs, and the like given at time of application for cards by some defendants with knowledge of the other co-conspirators that cards were so obtained). In each of these cases, the card was fraudulently obtained by the cardholder directly from the issuer.

In cases where the card was obtained by third parties from the original cardholder, some deception of or theft from the original cardholder has been deemed necessary for conviction. In *United States v. Lomax*, 598 F.2d 582 (10th Cir. 1979), the third parties "surreptitiously obtained" or stole the cred-

it card from the cardholder to whom it had been issued. In the only other case we have found considering a card obtained from a cardholder instead of an issuer, the court assumed no culpability under § 1644(b) if the defendant had not stolen the credit card but had been given it by a *bona fide* cardholder (even if the defendant had obtained the card from the cardholder with the intent not to pay the issuer for its use); *United States v. Colyer*, 571 F.2d 941 (5th Cir. 1978). The Court, holding that certain limitations imposed upon the defendant's cross-examination of a witness at trial constituted harmless error because the testimony would have been irrelevant, and affirming a conviction under 15 U.S.C. § 1644(b), stated "the crucial question" to be whether the defendant had been given the credit card or had stolen it; 571 F.2d, at 946–947 n.7.

■ Construction of a statute requires that the Court look first to the language of the statute to determine if there is any ambiguity. Where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant; *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978). It is not for the Court to expand the scope of a statute; criminal statutes are to be strictly construed and any ambiguity must be resolved in favor of lenity. *United States v. Enmons*, 410 U.S. 396, 399, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973); *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); *United States v. Allen*, 566 F.2d 1193, 1195 (3d Cir. 1977). As the Supreme Court stated in *United States v. Maze*,

> [i]f the Federal Government is to engage in combat against fraudulent schemes not covered by the statute, it must do so at the initiative of Congress and not of this Court.

414 U.S. 395, 405 n.10, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) (fraudulent use of credit card does not violate the mail fraud statute unless the mails are used to execute the scheme).[3]

---

**3.** In construing the mail fraud statute narrowly, the Court of Appeals below had relied in part

upon the recent passage of the credit card fraud amendments to the Truth-In-Lending Act,

However, the government claims that § 1644 must be construed to provide protection to card issuers rather than cardholders, because § 1643 [4] limits the liability of cardholders but no other statutory provision protects the card issuer. According to the government, § 1644 must be construed to focus on the loss suffered by the card issuer and reach the defendants' conduct. "To do otherwise would create a loophole in the statutory scheme which Congress obviously did not intend." Memorandum in Opposition to Motion to Dismiss Indictment, at 7 (Paper Filed # 12).

■ The government's argument fails for three reasons. First, the legislative history of the 1974 amendments to the Truth-In-Lending Act, though limited, manifests a clear Congressional intent to protect cardholders, yet is completely silent as to card issuers. As the Conference Report states,

[t]he Senate bill amended the Truth-In-Lending Act *for the purpose of protecting the consumer* against unfair and inaccurate credit billing and credit card practices. . . . The conferees accepted the Senate provision . . . .

Conf.Rep.No.93–1429, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.

News, pp. 6119, 6152 (emphasis added). The available legislative history provides no support for the government's assertion of Congressional intent nor for construing "fraudulently obtained" in any way other than its plain meaning.

Second, by limiting the protection of cardholders in certain ways, the Truth-In-Lending Act amendments provide greater protection for card issuers than the government concedes. Section 1643 limits cardholders' liability only for "unauthorized use" as defined in 15 U.S.C. § 1602(*o*).[5] Where purchases are authorized by a cardholder, the holder having sold or given another the card with knowledge that the other intended to use it without making payment, the issuer may seek full payment from the holder.[6]

■ Third, the Court's responsibility in construing a criminal statute is not to determine what it is reasonable to assume Congress intended nor whether Congress would have prohibited defendants' scheme had it thought of doing so. The only question here is whether Congress has made this conduct criminal under the statute charged in the indictment, however morally repre-

15 U.S.C. § 1644, presently before this Court; *United States v. Maze*, 468 F.2d 529, 536 (6th Cir. 1972). Such reliance might have permitted an inference that narrow construction of the mail fraud statute would require a broad construction of the credit card statute. However, Justice Rehnquist specifically stated that the Supreme Court's narrow construction of the mail fraud statute in no way depended upon the passage of the credit card fraud amendment; *United States v. Maze*, 414 U.S. 395, 404–5 n.9, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974). Rather, the Supreme Court's position followed the more general principles cited above. *See, United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820).

4. In pertinent part the statute provides:
§ 1643. Liability of holder of credit card— Limits on liability
(a) A cardholder shall be liable for the unauthorized use of a credit card only if the card is an accepted credit card, the liability is not in excess of $50, the card issuer gives adequate notice to the cardholder of the potential liability, the card issuer has provided the cardholder with a self-addressed, prestamped notification to be mailed by the cardholder in the event of the loss or theft of the credit card, and the unauthorized use occurs before the cardholder has notified the card issuer that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise.
15 U.S.C. § 1643 (1976).

5. Section 1602(*o*) provides that:
The term "unauthorized use", as used in section 1643 of this title, means a use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit.
15 U.S.C. § 1602(*o*) (1976).

6. *See, Martin v. American Express, Inc.*, 361 So.2d 597 (Ala.Civ.App.1978) (where a cardholder has voluntarily and knowingly allowed another to use his card, the cardholder is fully liable for charges in any amount accrued by the other even if the cardholder has orally imposed a spending limit on the other's use).

hensible or dishonest the defendants' conduct may be.[7]

The plain words of this statute do not cover the actions charged by the government. Because it is the Court's opinion that the statute relied upon does not extend to the conduct charged in these counts of the indictment, we need not reach the defendants' argument that the statute is unconstitutionally vague.

For the foregoing reasons, an Order will be entered granting defendants' motion to dismiss Counts 1, 3, 4, 5, 6, 7, 8, 9, 10 and 11 of the indictment.

---

7. The Court offers no opinion whether defendants have committed larceny, mail fraud, embezzlement, or any federal or state offense other than those charged in this indictment.