**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lourice BAKER and Lena Marie Knowlton, Defendants-Appellants.**

No. 79–5470.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1980.

---

Charles W. Tessmer, Bentley C. Kelly, III, Dallas, Tex., for defendants-appellants.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Dan C. Guthrie, Jr., Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, TATE and SAM D. JOHNSON, Circuit Judges.

GOLDBERG, Circuit Judge.

We are faced today with a lacuna in the midst of a somewhat dense federal law. The statutory language provides little guidance, and we have no helpful legislative history to aid us in filling the gap. Our task, then, is to read the collective mind of the 1948 Congress. Without a (very large) psychiatrist's couch, this task is difficult indeed.

### I. *Factual Background*

Appellants Lourice Baker and Lena Marie Knowlton were part-time employees of the Housing Authority of the City of Dallas ("DHA"), hired to help train DHA security guards.[1] DHA was the recipient of $3,500,-000 from the United States Department of Housing and Urban Development ("HUD") to improve conditions at low-income housing projects operated by DHA. On a quarterly basis, DHA was required to report to HUD the ways in which the federal money was being spent.[2]

---

1. Both appellants were also employed full-time as Dallas police officers.

2. One government witness testified at trial that the DHA security force which employed appellants was organized as part of the federally funded Target Project Program. Trial Transcript at 70–71.

Baker and Knowlton were convicted under 18 U.S.C. § 1001[3] of submitting to DHA false time sheets which claimed pay for hours not actually worked. The questions presented on appeal are whether the evidence at trial was sufficient to sustain a finding that the false statements made by appellants were material, and whether the trial court properly instructed the jury with regard to defendants' theory of the case. We answer both questions in the affirmative, and we affirm.

## II. *Materiality*

■ As Judge Gewin noted in *United States v. Lange*, 528 F.2d 1280 (5th Cir. 1976), "[p]roof of five elements is essential to sustain a conviction under the false statement proscription of § 1001: (1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction." *Id.* at 1287; *see United States v. Clearfield*, 358 F.Supp. 564, 574 (E.D.Pa.1973). In the case at hand, appellants Baker and Knowlton challenge the trial court's finding[4] of the third of these elements, and argue that the false statements made were not material because they could not affect any decision of HUD, the federal agency involved. Since the federal funds had already been appropriated at the time the false statements were made, and since Baker and Knowlton were paid not by HUD but by the DHA, appellants suggest that HUD could

not have been influenced by the submission of false time sheets.

■ The purpose of the materiality requirement of 18 U.S.C. § 1001 is "to exclude 'trivial' falsehoods from the purview of the statute." *United States v. Beer*, 518 F.2d 168, 170–71 (5th Cir. 1975). Statements which lack "the capacity to influence a determination required to be made" are too "trivial" to violate the statute. *Id.* at 172; *see United States v. Liechenstein*, 610 F.2d 1272, 1278 (5th Cir. 1980); *United States v. Guthartz*, 573 F.2d 225, 228 (5th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978); *United States v. Krause*, 507 F.2d 113, 118 (5th Cir. 1975). While the requirement of materiality explicitly applies only to the first clause of § 1001, "courts have inferred a judge-made limitation of materiality" on the second ("false statements") clause as well. *See Liechenstein, supra*, 610 F.2d at 1278. In addition, it is well-settled that the false statement need not be made directly to a federal agency to sustain a § 1001 conviction as long as federal funds are involved.[5] *See, e. g., United States v. Hooper*, 596 F.2d 219 (7th Cir. 1979); *United States v. Johnson*, 596 F.2d 842 (9th Cir. 1979); *United States v. Candella*, 487 F.2d 1223 (2d Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974); *United States v. Kraude*, 467 F.2d 37 (9th Cir.), *cert. denied*, 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d

---

3. 18 U.S.C.A. § 1001 states:

   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

   18 U.S.C.A. § 1001 (West 1976).

4. The issue of materiality in a prosecution under 18 U.S.C. § 1001 is "a question of law for determination by the court." *United States v. Winkle*, 587 F.2d 705 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979).

5. Most cases deal with the question whether the false statement need be made directly to a federal agency in terms of the statutory requirement that the matter be "within the jurisdiction of any department or agency of the United States." However, the question also pertains to materiality, since to be material the false statement must be able to have some effect on a federal agency. *See Krause, supra*, at 116. This effect is somewhat indirect when, as in the case before us, federal funds are given by a federal agency to a state or local agency which is subsequently deceived by defendants' false statements. However, the necessary link between deception of the non-federal agency and effect on the federal agency is provided by the federal agency's retention of "the ultimate authority to see that the federal funds are properly spent." *See United States v. Stanford*, 589 F.2d 285, 297 (7th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979).

664 (1972); *United States v. Waters*, 457 F.2d 805 (3d Cir. 1972) (per curiam).

In the case at hand, the statements made by appellants resulted in their each receiving substantial wages to which they were not entitled. The performance of the program was hindered since the federal funds were exhausted more swiftly than they would otherwise have been. In addition, the quarterly DHA reports required by HUD evidence the fact that the federal agency had "the ultimate authority to see that the federal funds [were] properly spent." *See Stanford, supra*, at 297. *See generally* note 5 *supra*. The false statements were thus material in that they had a substantial effect on the federal funds forwarded by HUD, on the performance of the DHA project, and on the pay received by the appellants. The determination affected by the statements, *see Beer, supra*, 518 F.2d at 172; *Liechenstein, supra*, 610 F.2d at 1278, was the determination of how much pay each appellant should receive.

### III. *Jury Instructions*

■ A more troubling issue raised by this appeal is whether the government must prove that a defendant *knew* of the federal agency's involvement in order to sustain a conviction under 18 U.S.C. § 1001. In other words, when the false statements are made to some organization which has received federal funds but which is not itself a federal agency, must a defendant have known

of the federal involvement in order to be convicted in federal court? Appellants contend that the trial court committed reversible error by refusing to instruct the jury that a defendant's knowledge of federal involvement is an essential element of a § 1001 conviction. Although the statutory language is far from clear on this matter, we believe that Congress intended no such requirement.

■ While past courts have analyzed the issue of defendant's knowledge of federal involvement in terms of whether the matter was "within the jurisdiction of a federal agency . . .," *see Stanford, supra*, 589 F.2d at 297; *Ebeling v. United States*, 248 F.2d 429, 434–35 (8th Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957), we prefer to couch the issue in terms of the "knowingly and willfully" requirement of the statute.[6] It is clear that in order to sustain a § 1001 conviction the government must prove that the defendant knowingly made a false statement with intent to deceive. *See Liechenstein, supra*, 610 F.2d at 1276–77; *Lange, supra*, 528 F.2d at 1288. It is quite unclear, however, whether the defendant must also know that his statement was material, i. e., that it was capable of influencing a federal agency. The statute can be read to require knowledge of falsity alone, but it can also be read to require knowledge of materiality, and hence knowledge of federal involvement.[7] Our

---

**6.** Defendant's knowledge of federal involvement is only peripherally related to the question whether the matter was within the jurisdiction of a federal department or agency. For example, courts have reasoned that the degree of federal agency involvement in a project may be evidenced by whether a project employee knew that a federal agency was involved, and that this has some bearing on whether the matter was "within the jurisdiction of a federal agency." *See Stanford, supra*, 589 F.2d at 297; *Ebeling, supra*, 248 F.2d at 434–35. Hence, some courts have expressed a reluctance to sustain a conviction under § 1001 when the false statements were submitted to a private employer under government contract, and when the defendant had no knowledge of federal involvement. *See Ebeling, supra; Lowe v. United States*, 141 F.2d 1005 (5th Cir. 1944). These cases are clearly distinguishable from the case we consider today since in *Ebeling* and

*Lowe* it was not apparent whether the matters involving private contractors were "within the jurisdiction of a federal department or agency," while in the case at hand agency jurisdiction is clear. DHA was required to make quarterly reports to HUD, and HUD retained "the ultimate authority to see that the federal funds [were] properly spent." *See Stanford, supra*, 589 F.2d at 297.

**7.** The words "knowingly and willfully" may modify merely the words "falsifies, conceals or covers up," or they may modify the phrase "falsifies . . . a material fact." 18 U.S.C.A. § 1001 (West 1976). Moreover, the judicial inference of materiality with regard to the second clause of the statute, *see Liechenstein, supra*, 610 F.2d at 1278, may similarly be modified by the "knowingly and willfully" requirement of the statute, or it may not be. The statutory language is simply unclear.

task, then, is to use the policy and purposes of the law in an effort to determine what Congress meant by its words.

18 U.S.C. § 1001 is designed to protect federal funds and functions from fraudulent interference. In furthering these purposes, it is irrelevant whether defendant knew that his intentionally false statements might eventually influence a federal agency. Moreover, the requirement that defendant intend to deceive by making a statement which he knows is false serves to insure against punishing one who has committed no culpable act. While we reassert this strict requirement of specific intent, we decline to extend it to require proof of defendant's knowledge of federal involvement. In other words, we hold that proof of defendant's knowledge that a federal agency was involved in the matter is not an essential element of a § 1001 conviction. *See United States v. Lewis,* 587 F.2d 854, 857 (6th Cir. 1978) (per curiam).

Our holding today in no way alters the essential elements of a § 1001 conviction as noted in *United States v. Lange, supra*; the government must still prove that a false, material statement was made with specific intent to deceive within the jurisdiction of a department or agency of the federal government. *Id.* at 1287; *see Clearfield, supra*, 358 F.Supp. at 574. We merely inject some meaning into a statutory vacuum by declining to read into the law the proposed requirement of defendant's knowledge of federal involvement.

■ Appellants also contend that the court erred in refusing to tailor its instructions to fit appellants' defense that the false time records were the result of mistake, accident and inadvertence. Although the requested instructions were not granted, the instructions delivered by the court adequately apprised the jury of appellants' defensive theory. The jury was told that appellants could only be convicted if the

evidence demonstrated beyond a reasonable doubt that they each acted "knowingly and willfully." Trial Transcript at 1134. "An act is done 'knowingly,' " the judge's charge went on to note, "if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason." Trial Transcript at 1135. Finally, the jury was told that the "knowingly and willfully" requirement excluded false statements made by "inadvertance, mistake, carelessness or for any other innocent reason." Trial Transcript at 1136. The jury charge in its entirety made clear the substance of appellants' correctly requested instructions, as required by *United States v. Cook*, 586 F.2d 572, 579 (5th Cir. 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *see United States v. Bush*, 599 F.2d 72, 75 (5th Cir. 1979).

## IV. *Conclusion*[8]

We have decided today that the target at which defendant aims his false statements is not conclusively relevant to materiality or specific intent. Appellants may not have intended to hit the federal bullseye in this case, but this alone does not require their acquittal. The statutory target may be narrowed by the strict requirements of materiality and specific intent, but it is still large enough to encompass the acts charged and proven here.

The false statements made by appellants were material. The first two requested jury instructions were legally incorrect, and the latter two requested instructions were given in substance. Finding no error in the proceedings below, we affirm. AFFIRMED.

---

8. Appellants' final contention, that there was a fatal variance between the indictment and the proof, is meritless and was conceded at oral argument. The appellants were adequately apprised of the charges against them, they were

tried only on the charges presented in the indictment, and they are adequately protected against a second prosecution for the same offense. *See Guthartz, supra*, 573 F.2d at 228.