**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Maria Del Carmen Castillo MONTEMAYOR, Defendant-Appellant.**

No. 82–2429.

United States Court of Appeals, Fifth Circuit.

July 28, 1983.

Rehearing Denied Sept. 6, 1983.

Matias Morin, Jr., Edinburg, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

TATE, Circuit Judge:

Mrs. Montemayor, a Mexican national, appeals from her convictions and consecutive sentences on two counts relating to her efforts to prove that her two children were born in the United States and thus not subject to deportation. Count 1 charged false statement in the procuring of Texas state certificates of Texas birth, in violation of 18 U.S.C. § 1001; Count 4 charged her with false testimony under oath before border patrol agents that the two children were born in the United States, in violation of 18 U.S.C. § 1546.

We affirm the convictions on both counts, rejecting as to Count 1 the defendant's contention that a false statement to a state agency to obtain a fraudulent birth certificate is as a matter of law not in a "matter within the jurisdiction" of the federal agency, a statutory pre-requisite for conviction under 18 U.S.C. § 1001, even though under the facts here found the purpose of obtaining the false birth certificate was for use in the federal agency's proceedings.

### Count One

■ Count 1 relevantly charges that, "in a matter within the jurisdiction of an agency of the United States", Mrs. Montemayor did "knowingly . . . did make or cause to be made Texas Delayed Certificates of Birth for the benefit of [the two children] knowing that they contained false and fraudulent statements regarding the birthplace"

of the children, in violation of 18 U.S.C. § 1001.

With regard to factual charge made by the indictment, 18 U.S.C. § 1001[1] provides criminal sanctions against "[w]hoever, *in any matter within the jurisdiction* of any department or agency of the United States knowingly and willfully . . . makes any false, fictitious or fraudulent statements or representations." (Emphasis added.) As we reiterated in *United States v. Baker,* 626 F.2d 512, 514 (5th Cir.1980), " '[p]roof of five elements is essential to sustain a conviction under the false statement proscription of § 1001: (1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction.' "

■ For the present purposes, it is conceded that the first four elements were adequately proved. Mrs. Montemayor, the defendant, contends that, nevertheless, the evidence is insufficient to support a conviction because the obtaining from a state agency of a false birth certificate, although punishable as a violation of state law, was not "a matter within the jurisdiction of" the federal immigration service, a statutory prerequisite to conviction under this count. The defendant points out that birth certificates from state agencies are procured for many nonfederal purposes, such as for use in connection with state marriage licensing and state succession law.

We must first note that the district court's instructions to the jury made plain that simple falsity in statements procuring the fraudulent state birth certificates was not sufficient in itself to prove guilt of the federal crime charged under § 1001. The court instructed the jury that they must also find that the falsity was for a federally connected purpose—that they must find be-

---

1. 18 U.S.C. § 1001 provides in full:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than

$10,000 or imprisoned not more than five years, or both.

It is to be noted that the indictment could under the evidence have undoubtedly charged a violation of the statute, if the criminal conduct specified had been that the defendant Mrs. Montemayor *used* any false writing or document in a matter within the jurisdiction of the immigration service. However, perhaps inadvertently, the indictment did not so charge.

yond a reasonable doubt not only that the defendant made or caused false statements to be made in the Texas delayed birth certificates, but also "that she did this with reference to a matter within the jurisdiction of a department or agency of the United States. That is, that this was done for the purpose of establishing citizenship, a falsehood establishing citizenship, and that Mrs. Montemayor did this willfully, as I have defined this term to you, and knowingly, that is, she had knowledge of the falsity of the statements."

Thus, under these instructions, and according on appellate review the jury verdict the required weight in its resolution of factual issues, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1962), we cannot disturb the jury's determination that Mrs. Montemayor's participation in the false statements made to a state agency were for the purpose of establishing the children's citizenship in the proceedings before the federal agency. Under the jurisprudential interpretations to be cited, these false statements, although not made directly to the federal agency itself, may factually be held to be a matter within the jurisdiction of the federal agency. *See also Bryson v. United States,* 396 U.S. 64, 71, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969), where the Court observed that the term " 'jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001."

The defendant's counsel persuasively argues that, as a matter of law, the false statement to a state agency, a crime under state law, should not under the proper statutory construction of § 1001 be construed to be a false statement in a "matter within the jurisdiction" of the federal immigration service. He relies on principles of strict construction and federal-state comity most recently enunciated in connection with reversal of a conviction in *United States v. Grissom,* 645 F.2d 461, 467 (5th Cir.1981), which itself quoted from and relied upon *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

We ultimately conclude, however, that the defendant's contention is foreclosed by interpretations of § 1001 reached in decisions to be cited of this and other circuits.

These decisions have concerned instances where the false statement is made to a state agency charged with administering some federally funded program. Abstractly, it may be argued, a false statement to a state agency to procure a document usable for many non-federal purposes presents a distinguishable issue. Nevertheless, a false statement made to a local agency administering a federal program has been held to create federal criminal liability under § 1001, even though the defendant did not know of its ultimate federal purpose. Here, where the false statement was made to a state agency expressly for the purpose of influencing a federal agency in the performance of a function within its jurisdiction, it would be inconsistent with this jurisprudence, it seems to us, to hold that the false statement to a state agency made for federal-agency purposes was not a matter "within the jurisdiction of" the federal agency.

In *United States v. Baker, supra,* for instance, the issue before a panel of this circuit is whether the district court erred in denying a requested instruction that a defendant must *know* of the federal agency's involvement in order to sustain a conviction under § 1001. The defendants in that case were part-time employees of a local housing authority funded by a federal agency. The employees had submitted to the local agency false time sheets that claimed pay for hours not actually worked. They received these excess wage payments from the local authority, which itself had earlier received them from the federal agency. In rejecting the contention that willfull intent to defraud the federal agency (i.e., in addition to a proven intent to defraud the local authority) was a necessary element of the crime, and in affirming the conviction, we stated:

18 U.S.C. § 1001 is designed to protect federal funds and functions from fraudulent interference. In furthering these purposes, it is irrelevant whether defendant knew that his intentionally false statements might eventually influence a

federal agency. Moreover, the requirement that defendant intend to deceive by making a statement which he knows is false serves to insure against punishing one who has committed no culpable act. While we reassert this strict requirement of specific intent, we decline to extend it to require proof of defendant's knowledge of federal involvement. In other words, we hold that proof of defendant's knowledge that a federal agency was involved in the matter is not an essential element of a § 1001 conviction. *See United States v. Lewis*, 587 F.2d 854, 857 (6th Cir.1978) (per curiam).

626 F.2d at 516.

The cited *Baker* disposition is perhaps distinguishable as deciding only that the knowing and willful requirement for a false statement to a federally-funded agency need not include knowledge of the federal agency's involvement, since the false statement by virtue of the federal-fund nexus is indeed a matter within the jurisdiction of the federal agency. *See* 626 F.2d at 515 n. 6. Nevertheless, as earlier noted, it would be incongruous with that decision to hold in the present case that the false statement to the state agency made for the purpose of wrongfully influencing federal agency action was not a matter within the jurisdiction of the federal agency for purposes of § 1001.

Moreover, the prevalent jurisprudence is that it is an issue of fact, not law, whether a false statement, made by the defendant to a state agency and later used by the agency for federal purposes, is made in a "matter within the jurisdiction of the" federal agency, § 1001. *See* summary in *United States v. Stanford*, 589 F.2d 285, 297 (5th Cir.1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979):

> It is the general rule, however, that a statement may concern a matter within the federal jurisdiction described in section 1001, even if the statement is not submitted directly to the federal department or agency involved, and the federal agency involvement is limited to reimbursement of expenditures. *See, e.g.,*

*United States v. Candella*, 487 F.2d 1223 (2d Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974); *United States v. Matanky*, 482 F.2d 1319 (9th Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973); *United States v. Waters*, 457 F.2d 805 (3d Cir. 1972); *Ebeling v. United States*, 248 F.2d 429 (8th Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957). Furthermore, although this court has never considered this question, we do not read the decisions of other circuits as establishing an absolute requirement that fraudulent statements be accompanied by knowledge of the federal involvement to be a matter within the jurisdiction of a federal agency and thus violative of section 1001. The term "jurisdiction" merely incorporates Congress' intent that the statute apply whenever false statements would result in the perversion of the authorized functions of a federal department or agency. *See United States v. Gilliland*, 312 U.S. 86, 93, 61 S.Ct. 518, [522], 85 L.Ed. 598 (1941). Thus, when a statement is not submitted directly to a federal agency, knowledge of federal involvement may be one circumstance to be considered in assessing the potential threat the statement may be to the proper functioning of the federal agency involved. This knowledge may be decisive when the involvement of the United States in the matter to which the statement relates is peripheral. *Compare Ebeling v. United States, supra, with Lowe v. United States*, 141 F.2d 1005 (5th Cir.1944). In other instances, a showing that the defendant had actual knowledge of federal involvement might lessen the need for a detailed examination of the federal government's relationship to the statements. *See United States v. Lange*, 528 F.2d 1280, 1287 n. 11 (5th Cir.1976); *United States v. Candella, supra,* at 1226–27.

We must therefore reject the defendant's contention that the false statement made to the state agency could not as a matter of law be considered as falsely made "in any

matter within the jurisdiction of" the federal agency for purposes of 18 U.S.C. § 1001.

The defendant also raises some evidentiary issues with regard to the sufficiency of the government's proof of the Mexican birth of the children. (In the absence of such proof, the statements made by the defendant to obtain the Texas birth certificates would, of course, not be proven false.) These questions are also raised in regard to the conviction under Count Four, and our discussion below of the conviction under this latter count will note and decide these issues.

*Count Four*

Mrs. Montemayor was also convicted on Count 4. This count charged her with, in violation of 18 U.S.C. § 1546, making a false statement under oath on an affidavit form of May 14, 1981 to United States Border Patrol Agents that the two children were born in the United States. § 1546 penalizes, inter alia, a false statement under oath in any "affidavit, or other document required by the immigration laws or regulations prescribed thereunder."

Mrs. Montemayor admits the statements were made, but she denies they were false. Mrs. Montemayor testified that, although she lived in Monterrey, Mexico during the period in which the two children were born, she had travelled to Baytown, Texas, in each instance for the birth of the child. The Texas midwife and her daughter corroborated her testimony. The children were born in 1977 and 1978, but the entries recording their births in the midwife's register were not made, at the earliest, before January 15, 1980.

In addition to relying upon admissions made by Mrs. Montemayor on previous occasions that the children were born in Mexico, the government also relied upon documentary evidence: 1. authenticated Mexican birth certificates showing the birth of the children in Mexico in 1977 and 1978, with the Mexican birth registration in each case having been made some six months

after each child's birth; 2. authenticated Mexican hospital records, showing the birth of these children in Mexican hospitals in 1977 and 1978; and 3. (without objection by the defendant) the testimony of a church secretary identifying from church records the baptismal certificate of the child born in 1978, which when he was baptized on 1 April 1979, stated that the child was born in Mexico. The secretary testified that this date was based on information then given to church officials by those who brought the child to be baptized.

By its verdict, the jury found that Mrs. Montemayor had falsely sworn on May 14, 1981 to the border patrol that her children were born in the United States. In seeking reversal of this conviction, Mrs. Montemayor makes three contentions, none of which we find to have reversible merit, for the reason noted:

■ (1) Despite the defendant's contention to the contrary, the Mexican official records of birth were properly authenticated by certification of American consular officials, as authorized by Fed.R.Evid. 902(3).

■ (2) Despite the defendant's conclusory contention that § 1546 permits conviction for false statements made only at the time of entry in the United States, the literal terms of the statute penalize any false statement under oath "with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder." The false statement here given was executed by Mrs. Montemayor after she had been arrested for a deportation hearing, on affidavits supplied to her by the immigration service for that purpose.

■ (3) The final contention raised by Mrs. Montemayor relates to the denial of her motion to suppress, and to the introduction into evidence against her, of her admissions to an immigration agent[2] that the children were born in Mexico. This state-

---

2. The agent had accompanied drug enforcement agents in their warranted search—based on probable cause with regard to a drug violation by her husband—of her home.

ment was made on April 28, 1981, and it was repeated at the immigration station later that day. As a result, Mrs. Montemayor and the children were permitted to leave for Mexico. Mrs. Montemayor asserts that these statements were taken in violation of her *Miranda* rights, since no *Miranda* warnings were given.

Assuming for present purposes that *Miranda* warnings were required, the error in the admission of these statements was harmless, under the record and the entire evidence. In May, 1981, a little over two weeks after the April statements, Mrs. Montemayor was arrested for her illegal re-entry into the United States. When arrested for deportation, she stated on May 13th to the immigration officers, as she had previously, that the two children were born in Mexico. (It was not until the following day that she changed her story and stated the United States birth of the children in the affidavit for which she is now prosecuted for false statement.)

This May 13 admission of Mexican birth was made only after full *Miranda* warnings were given. No complaint can be made as to its involuntariness. In the light of its admissibility and of the strong documentary proof of Mexican birth—and considering that Mrs. Montemayor had full opportunity to produce testimony to support her rather improbable version of American birth of the children, which the jury did not believe—, we are unable to conclude that the introduction of the April admissions could have contributed to her conviction. The introduction into evidence of the April admissions, if error, was harmless.

### Conclusion

Accordingly, we AFFIRM the convictions.

AFFIRMED.