UNITED STATES of America,
Plaintiff-Appellee,

v.

Merlin H. SUGGS, Defendant-Appellant.

No. 84–8210.

United States Court of Appeals,
Eleventh Circuit.

March 28, 1985.

E. Freeman Leverett, Elberton, Ga., for defendant-appellant.

Robert S. Stubbs, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

RONEY, Circuit Judge:

Defendant was convicted of falsifying Georgia Department of Labor travel vouchers in violation of 18 U.S.C.A. § 1001. He brings numerous issues on appeal, the most critical of which relate to the prosecutor's closing comment on defendant's failure to testify before the Grand Jury and the introduction of an incriminating statement made while defendant was in custody and represented by counsel. Finding any error to be harmless, we affirm.

Defendant and his wife were both employed by the Georgia Department of Labor. They were indicted in an eleven count indictment under the false statement statute, 18 U.S.C.A. § 1001, for filing false travel vouchers under a program receiving United States Department of Labor funds. Defendant's wife was acquitted on all counts. Defendant was found guilty on Count Six and acquitted of all other charges.

Count Six was based on a travel voucher submitted on February 17, 1982, which was purportedly fraudulent in two respects: first, that the signature of the signing witness, Helen Brown, was in fact signed by defendant's wife; second, that the expense voucher claimed expenses for two trips which were not in fact made. One alleged trip was from Elberton to Toccoa, and return, on January 28, 1982, and the other was from Elberton to Blue Ridge and return on January 19–20, 1982. The project code 175 was on the voucher indicating the funds used to pay defendant's "travel" expenses were from the Targeted Job Tax Credit Program administered by the Georgia Department of Labor through a grant from the United States Department of Labor.

The evidence against defendant, consisting mostly of telephone records, indicate that defendant was not in Blue Ridge during the period listed on the voucher. Helen Brown testified that she did not sign the voucher and that she gave no one the authority to sign her name.

*Prosecutor's Closing Argument*

■ The question raised by Suggs concerning the closing comments of the prosecutor turns on whether it was a fair response to the defense argument and, if not, whether it was harmless error. Defense counsel in his closing argument before the jury, commenting upon the nature of an indictment, remarked:

An indictment is just a charge. It is an *ex parte* thing. Mr. and Mrs. Suggs were not there. They didn't have a thing to say. They were not heard from.

Referring to this observation in his closing remarks, the prosecutor stated that defense counsel

mentioned the fact that an indictment, a grand jury proceeding which culminates an indictment is *ex parte*, a Latin term which means only one side is heard. Mr. Leverett knows that was his choice in

this case. His clients were invited and upon his advice they declined to appear.

Defense counsel immediately objected to this reference to defendant's failure to testify before the grand jury. The trial court sustained the objection and admonished the jury to disregard the prosecutor's comments.

There appears to be little question that the prosecutor's comments were improper. Even if Suggs had testified at the grand jury proceeding, it is largely an *ex parte* exercise. Suggs had a constitutional right not to testify. He could not have turned the grand jury proceeding into an adversarial one with representation by counsel and freedom to introduce evidence and cross-examine witnesses merely by choosing to testify. A United States Government prosecutor should know this. To suggest to the jury otherwise is misleading and highly improper, and the decision of this Court is not intended to condone the prosecutor's conduct.

Defense counsel's remarks, of course, resorted to out-of-record, irrelevant evidence. Such comments which provoke prosecutorial response often lead to an affirmance of a conviction either because there is no error, the remarks being a "fair response," or because the error is harmless under the "invited error" doctrine. Referral to such matters often leads to invocation of the "fair response" or "invited error" doctrine, which alone leads to an affirmance of a conviction. *United States v. White*, 377 F.2d 908, 911 (4th Cir.1967); *United States v. Griggs*, 735 F.2d 1318, 1322–23 (11th Cir.1984). *But see United States v. Meneses-Davila*, 580 F.2d 888, 895–96 (5th Cir. 1978). We doubt, however, that the prosecutor's comments fall within these cases. If defense counsel makes an improper statement, such as the one here, there are other ways to cure the fault without misleading the jury.

■ The question on this appeal, then, is whether we are required to reverse the defendant's conviction because of this mistake. We think not. A prosecutor's remarks, even of constitutional magnitude, may not require reversal if the Court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■ This case must be examined from the standpoint of whether the comment related not only to the failure of Suggs to testify before the grand jury, but whether it could be construed to be a comment on defendant's failure to testify in this trial. Prosecutorial comment on the failure to testify at trial constitutes error. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

As to the latter aspect, we reject the argument that the comment would reflect on Suggs' failure to testify at the trial. The comment was directed to the *ex parte* nature of the grand jury proceeding. The jury knew that Suggs was present at the trial, a hotly contested, adversarial proceeding. The purpose of defense counsel's comment was to distinguish the grand jury proceeding from what was taking place before the jury. Thus, we view the case as one akin to comment on post-*Miranda* warning silence, and not one akin to comment on the failure of a defendant to take the stand.

■ This is similar to comment on post-*Miranda* warning silence because in both the grand jury and the post-*Miranda* situation, the reference to silence goes to behavior prior to trial. Prosecutorial comment on post-*Miranda* silence is unconstitutional. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). This Circuit has examined the *Doyle* issue and its relationship to the harmless error rule on numerous occasions. *See, e.g., Chapman v. United States*, 547 F.2d 1240, 1248 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977); *Sullivan v. Alabama*, 666 F.2d 478, 485 (11th Cir.1982). There has never been any question but that harmless error may render non-reversible improper prosecutorial conduct.

The concept has turned out to be so fact specific, however, that "the *Doyle* rule requires a case-by-case application...."

*United States v. Davis,* 546 F.2d 583, 594 (5th Cir.), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). Still, the cases are helpful in pointing out certain key factors to look for. This Court stated in *United States v. Harp,* 536 F.2d 601 (5th Cir.1976), that if the prosecutor's comments strike "at the jugular" of the defendant's case, the comment "cannot be classified as harmless." *Id.* at 603. In *Davis,* 546 F.2d at 594–95, the Court stressed the harm of "prosecutorial focus—by repetitive questioning—on a defendant's silence, as in *Doyle*" or "highlighting" the defendant's silence before the jury. Those considerations are balanced against "the strength of the evidence of defendant's guilt." *United States v. Meneses-Davila,* 580 F.2d 888, 890 (5th Cir. 1978); *Sullivan,* 666 F.2d at 485.

Judged by these standards, the prosecutor's comment was harmless error. In addition to sustaining an objection and admonishing the jury at the time, the court in later instructions again warned the jury that defendant's failure to appear before the grand jury was of no consequence. The evidence of defendant's guilt on Count Six was substantial. The jury obviously carefully evaluated the evidence and acquitted defendant on all other charges. Unlike *Doyle* the prosecutor never focused on defendant's silence. His comment was solitary and subject to immediate correction by the court. There was no "highlighting" of defendant's decision to remain silent. It was never a "jugular" issue. It appears beyond a reasonable doubt that the comment played no part in the jury deliberations. We have examined a recent Supreme Court case involving prosecutorial misconduct and the plain error doctrine, and find it supports the above analysis and the affirmance of the district court's action in this case. *United States v. Young,* — U.S. —, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

*Incriminating Statement*

A few facts are needed to understand the argument concerning the introduction of the incriminating statement. Defendant and his wife were arrested at their home in Elberton, Georgia. They were transported in separate cars to Athens for processing. One agent accompanying defendant testified that after being shown a copy of his indictment, Suggs blurted out: "Heck or hell, everybody cheats on their travel vouchers." Another agent testified he made the statement that "everybody falsifies their travel vouchers." Defendant denied ever making the statement.

Testimony relating to defendant's incriminating statement was admitted into evidence by the trial court over defendant's objection, after a *Jackson-Denno* hearing. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963). The record indicates that the investigating officers knew defendant was represented by counsel at the time of the comment and that he had stated his desire to remain silent after being told of his *Miranda* rights.

 If the incriminating statement was made in response to any kind of interrogation after defendant apprised the agents of his wish to remain silent, it is inadmissible as violative of the Fifth and Sixth Amendments. *Miranda v. Arizona,* 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–8, 16 L.Ed.2d 694 (1966); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *See also Smith v. Illinois,* — U.S. —, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (once right to counsel invoked, further questioning must cease). Voluntary incriminating statements, however, not made in response to an officer's questioning are freely admissible. *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1629; *Rhode Island v. Innis,* 446 U.S. 291, 299–300, 100 S.Ct. 1682, 1688–1689, 64 L.Ed.2d 297 (1980); *United States v. Castro,* 723 F.2d 1527, 1530 (11th Cir. 1984).

 While the record is somewhat confusing as to exactly what was said when, the evidence reasonably supports the trial court's finding that defendant's comment was a spontaneous exclamation not prompted by any questioning. The trial court apparently found that Suggs made the

statement not as a result of any Government probing, but spontaneously after he was shown his indictment. The various comments concerning prison conditions, family pressure, and the like were insufficient to require a finding that they were the cause of defendant's remark. The trial court was required to determine the credibility of conflicting witnesses. The trial court obviously believed the Government witnesses. Credibility choices are for the trial, not the appellate court. *United States v. Black*, 497 F.2d 1039 (5th Cir. 1974); *United States v. Gianni*, 678 F.2d 956 (11th Cir.1982), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1983).

■ Even had there been improper questioning during the trip to Athens, the district court could properly hold that the defendant's remark was not responsive to any of the alleged questions or remarks. Voluntary comments unresponsive to governmental questioning are admissible even after *Miranda* rights are asserted. *Castro*, 723 F.2d at 1530. The trial court committed no reversible error in admitting the incriminating statement.

### Other Issues

Defendant raises two jurisdictional issues which need some clarification. First, he argues that the trial court erred in charging the jury that "there is no requirement that the defendant knew of the federal involvement in order to be convicted of making false statements."

■ It is undisputed that in order to be within agency jurisdiction of section 1001, the false statement need not be presented directly to an agency of the United States or that federal funds actually be used to pay the claimant. The fact that a state agency uses federal funds is generally sufficient. *See, e.g., United States v. Baker*, 626 F.2d 512, 514 (5th Cir.1980); *United States v. Richmond*, 700 F.2d 1183, 1187–88 (8th Cir.1983).

■ This Court has explicitly held that "proof of defendant's knowledge that a federal agency was involved in the matter is not an essential element of a section 1001 conviction." *United States v. Baker*, 626

F.2d 512, 516 (5th Cir.1980). *See also United States v. Montemayor*, 712 F.2d 104, 107–09 (5th Cir.1983). In *United States v. Sorrow*, 732 F.2d 176, 178 (11th Cir.1984), a case involving a similar statute, 18 U.S.C.A. § 371, this Court declared that "[t]he desire to protect the federal treasury ... would be unduly and arbitrarily circumscribed by requiring proof of anti-federal intent."

In *United States v. Yermian*, — U.S. —, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984), the Supreme Court held "there is no basis for requiring proof that the defendant had actual knowledge of federal agency jurisdiction." — U.S. at —, 104 S.Ct. at 2940, 82 L.Ed.2d at 59. Defendant's contention that the Supreme Court established by implication a constructive knowledge requirement, *see id.*, — U.S. at — n. 14, 104 S.Ct. at 2943 n. 14, 82 L.Ed.2d at 63 n. 14, is a wrong interpretation of the opinion and in any event focuses on dictum which would be an insufficient basis for this panel to overrule prior holdings of this Court.

Defendant's argument that *Baker* is not controlling because 42 U.S.C.A. § 503(a)(1) removes federal jurisdiction "over matters of employment in state labor departments" is facially invalid. Section 503(a)(1) states only that the Secretary of Labor has no authority to make personal or salary decisions relating to those state employees compensated with federal aid funds.

■ Defendant's second jurisdictional issue asserts that the prosecution was required to bring this action under a more specific statute. Although the funds involved here are CETA funds and 18 U.S. C.A. § 665 deals specifically with CETA fund fraud, failure to use a more specific statute is not grounds for reversal. *United States v. Fern*, 696 F.2d 1269, 1273 (11th Cir.1983); *United States v. Beer*, 518 F.2d 168, 173 (5th Cir.1975).

We have examined defendant's arguments concerning jury instructions and other matters, and find they merit neither

reversal of the conviction nor further discussion in this opinion.

AFFIRMED.