UNITED STATES of America,
Plaintiff-Appellee,

v.

Levis E. LAWSON, Sr.,
Defendant-Appellant.

No. 86–3020.

United States Court of Appeals,
Eleventh Circuit.

Feb. 13, 1987.
Rehearing and Rehearing En Banc
Denied March 19, 1987.

Aaron K. Bowden, Jacksonville, Fla., for defendant-appellant.

Ernst D. Mueller, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges, and HOFFMAN,* Senior District Judge.

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

WALTER E. HOFFMAN, Senior District Judge:

### Background

Levis E. Lawson, Sr., appeals from a judgment of conviction on a charge of willfully using false writings and documents containing materially false statements in a matter within the jurisdiction of the U.S. Department of Housing and Urban Redevelopment. Lawson's conviction was for a violation of 18 U.S.C. § 1001. We affirm the judgment of the district court.

### Procedural History

On June 13, 1985, a grand jury returned the original two-count indictment against Lawson, charging him with making materially false statements for the purpose of influencing the action of the United States Department of Housing and Urban Development, in violation of 18 U.S.C. § 1010 and with publishing false construction invoices in violation of 18 U.S.C. § 495. In response to a summons, Lawson appeared and pled not guilty. He was released on bond on June 24, 1985. Lawson's July 22, 1985, motion to dismiss the indictment was denied on August 12, 1985. Despite the court's denial of Lawson's motion to dismiss the first indictment, on August 14, 1985, the grand jury returned a superseding indictment which charged Lawson with a single count, violation of 18 U.S.C. § 1001.

Upon Lawson's request and the government's consent, the case was tried without a jury on October 9 and 10, 1985. At the close of trial, the court made partial findings of fact. Both parties then submitted memoranda on the issues of jurisdiction and materiality. On November 18, 1985, the trial court issued an order and opinion finding Lawson guilty as charged in the superseding indictment. On January 3, 1986, the court sentenced Lawson to five years, and on the condition that Lawson be confined in a jail-type or treatment institution for six months and to probation for four and one-half years, to commence upon Lawson's release from confinement. The court also imposed a fine of $10,000, payable within sixty days after release from confinement. From this judgment of conviction, Lawson appeals and remains at liberty pending resolution of the appeal.

### Facts

The Housing Authority of the City of Live Oak, Florida (Housing Authority) and Lawson Construction Company, Inc. (Lawson Construction) entered into a lease effective June 1, 1971. Under the terms of the lease, Housing Authority acquired for five years from Lawson Construction fifty housing units at Goldburg Circle and Lawson Heights in Live Oak, Florida. The lessee renewed for one five-year term; however, on September 10, 1980, Lawson Construction cancelled the lease effective June 1, 1981.

The Secretary of the United States Housing and Urban Development (U.S. HUD) approved the lease; however, the United States was not a contracting party. The lease provided that the Housing Authority would return the leased units to Lawson Construction in their original condition, less normal wear and tear. The Housing Authority sublet the units to low-income families, in fulfillment of the purpose of the lease and pursuant to Florida law. The funds for operating the housing projects came from rent money generated by this subletting and from U.S. HUD funds. The annual contributions contract between U.S. HUD and Housing Authority provided that nothing in the contract should be construed as creating or justifying any claim against the United States by any third party.

The annual contributions contract remained in effect in May 1982 when Housing Authority filed a complaint against Lawson Construction for a declaratory judgment in the Circuit Court, Third Judicial Circuit of Florida, Suwannee County. *The Housing Authority of the City of Live Oak, Florida v. Lawson Construction Company*, No. 82–157–CA. In this action, Lawson Construction counterclaimed for damages for the restoration of the units to their original condition, minus ordinary wear and tear. Housing Authority notified U.S. HUD of the lawsuit, but U.S. HUD was not a party. U.S. HUD funds paid

Housing Authority's legal expenses with the exception that Housing Authority paid the fee of its private attorney. Under the terms of the contract, U.S. HUD would also pay any judgment entered against Housing Authority. Because the case is still pending, U.S. HUD has expended no money to date in this action.

The issues in the case *sub judice* focus upon the May 11, 1984, discovery deposition of Lawson in preparation for trial of the Third Judicial Circuit case. During this deposition Housing Authority's attorney asked Lawson if he had the documents which reflected expenditures for repairs of the apartments. Under oath, Lawson produced numerous documents which he alleged were reflective of the relevant expenditures. Beyond submitting these documents to Housing Authority's attorney during his deposition, Lawson apparently did not further represent to Housing Authority that the papers documented restoration expenses. Housing Authority neither submitted Lawson's documentation to U.S. HUD nor requested a payment to Lawson Construction based upon this documentation.

Three days prior to Lawson's deposition, Lawson approached Clarence Nettles with the request that Nettles sign several false invoices relating to work at the Live Oak housing project previously leased by Lawson to Housing Authority. Nettles is Lawson's in-law and some-time employee. Promising to return the following morning, Lawson left Nettles's home, at which time Nettles attempted to contact an FBI agent whom he had met when he was a defense witness in a previous criminal trial. Before the agent returned Nettles's call on May 9, 1984, Lawson again contacted Nettles. The five invoices totaling $14,780.00, which Nettles completed at Lawson's urging, clearly exceeded the $500.00 which Nettles had been paid for work actually completed.

Lawson instructed Nettles, if subpoenaed, to say that he and his wife, Randy, had done the work for the $14,780.00 but that they had not yet been paid.

At the deposition on May 11, 1984, Lawson presented not only the invoices which Nettles prepared but also numerous other false invoices from James Lawson, Dwayne Lawson, Levis Lawson, Jr., Mike Eagan, and Thomas Fields. A total close to $100,000 was reflected on the faces of these invoices. The trial court found that all of these documents were false and fraudulent.

## Standard of Review

All factual findings of the trial court must be upheld unless this court finds that the factual findings were clearly erroneous. *United States v. Cruz,* 581 F.2d 535, 540–41 (5th Cir.1978) (en banc). The primary issue of this action, whether the defendant's criminal conduct was properly prosecutable under 18 U.S.C. § 1001, is a question of law subject to *de novo* review by this court. *United States v. Plascencia-Orozco,* 768 F.2d 1074, 1076 (9th Cir.1985).

## DISCUSSION

To make any false or fraudulent statement in any matter within the jurisdiction of a federal agency is a federal crime under 18 U.S.C. § 1001.[1] Proof of five elements is essential to sustain a conviction pursuant to this statute: (1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction. *United States v. Lange,* 528 F.2d 1280, 1287 (5th Cir. 1976); *United States v. Lichenstein,* 610 F.2d 1272 (5th Cir.), *cert. denied sub nom. Bella v. United States,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). Only jurisdiction and materiality are issues in the present case.

---

**1.** 18 U.S.C. § 1001 provides in full: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or denies a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

### Jurisdiction

■ Lawson alleges that statements made under oath in a state judicial proceeding, in which he contends the United States was not a party, are not within the jurisdiction of 18 U.S.C. § 1001. Lawson further alleges that at the time of his deposition the matter was not within the jurisdiction of any department or agency.

The United States refutes Lawson's contention that the United States was not a party to the state court proceeding. Evidence presented to the trial court clearly established the existence of an annual contributions contract between U.S. HUD and the Housing Authority of Live Oak; Housing Authority was the contractual agent of U.S. HUD. The federal agency was authorized to and had agreed to pay any damages arising out of the declaratory judgment action in state court. Trial court testimony showed that any settlement figure would have been specifically authorized and approved by U.S. HUD before it was agreed to by Housing Authority. Consequently, although Housing Authority was the named party in the litigation, Housing Authority was in reality an agent for U.S. HUD. Since U.S. HUD is clearly an agency of the federal government and since U.S. HUD was actively concerned with the outcome of the litigation, jurisdiction lies, pursuant to 18 U.S.C. § 1001. Lawson's production of false documents during his state court deposition is also a false statement to the United States.

An excellent discussion of "jurisdiction" as used in 18 U.S.C. § 1001 is found in *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984). In *Rodgers* the Court wrote, "The most natural, nontechnical reading of the statutory language is that it covers all matters confided to the authority of an agency or department." *Id.* at 479, 104 S.Ct. at 1946. The Court concluded that a department or agency has jurisdiction when it has the power to exercise authority in a particular situation. Quoting *United States v. Adler*, 380 F.2d 917, 922 (2d Cir.), *cert. denied*, 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602 (1967), the Court noted, "the word 'jurisdiction' as used in the statute must mean simply the power to act upon information when it is received." Thereupon the Court wrote that "within the jurisdiction" merely differentiates official, authorized functions of an agency from peripheral matters. *Id.,* at 466 U.S. at 479, 104 S.Ct. at 1946. In this case, in reliance on the annual contributions contract, U.S. HUD had the power to act upon the results of the state court action and was prepared to act in official agency capacity in so doing.

Furthermore, in deciding a question of materiality, the predecessor to this circuit has stated, "it is well-settled that the false statement need not be made directly to a federal agency to sustain a § 1001 conviction as long as federal funds are involved." *United States v. Baker*, 626 F.2d 512, 514 (5th Cir.1980). Here U.S. HUD funds were definitely involved. Lawson presented false documents to the Housing Authority's attorney during his deposition. Therefore, we conclude that the trial court was correct in finding jurisdiction under 18 U.S.C. § 1001.

■ In the alternative Lawson argues that the use of 18 U.S.C. § 1001 is improper when the false statement is made in a federal judicial proceeding. However, the cases upon which Lawson relies can be factually distinguished from the present action. Lawson offers two cases which involve federal civil litigation between private litigants. *United States v. London*, 714 F.2d 1558 (11th Cir.1983); *United States v. D'Amato*, 507 F.2d 26 (2d Cir. 1974). The courts in these two cases found § 1001 inapplicable. Citing *D'Amato, London* states "the statute is not intended to apply to false statements made in civil actions in the United States Courts where the government is not a party to the lawsuit; instead, the statute was intended to proscribe only those false statements meant to deceive the government or its agencies." *London*, 714 F.2d at 1561. In *London* an attorney presented a *purported* court order to clients in an effort to extract a large sum of money from them; in fact, the attorney had fabricated the order. This fraud was not against the government but against the lawyer's clients. *London*, 714

F.2d at 1562. In *D'Amato,* the defendant filed an affidavit denying knowledge of the counterfeit nature of a product which he sold. Although the affidavit was an official document, the falsehood contained therein was intended to deceive a corporation, not the government. Under *D'Amato,* 18 U.S.C. § 1001 may indeed be applied to statements made or used in a court proceeding if "the false statement in question involved a fraud upon the Government or was made to an investigative or regulatory agency of the Government in connection with some matter legitimately within the agency's jurisdiction." 507 F.2d at 27–28. Clearly these cases are distinguishable from Lawson's case as the persons involved did present false documents, but in so doing they were not trying to deceive the government. Lawson was specifically trying to deceive the government, not solely the court. Lawson was attempting to extract more money than he deserved for restoration, and the money would have been authorized under U.S. HUD's annual contributions contract.

■ Lawson also cites a number of criminal cases to support the judicial proceedings exception to 18 U.S.C. § 1001. *United States v. Mayer,* 775 F.2d 1387 (9th Cir. 1985); *United States v. Abrahams,* 604 F.2d 386 (5th Cir.1979); *United States v. Erhardt,* 381 F.2d 173 (6th Cir.1967); *Morgan v. United States,* 309 F.2d 234 (D.C.Cir.1962), *cert. denied,* 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963). The criminal version of this exception maintains that 18 U.S.C. § 1001 is not a proper basis for prosecuting a defendant who has made a false statement in a "judicial proceeding" as opposed to an "administrative proceeding." The cases, read together, indicate that prosecutions under the named statute are not permissible in the case of statements made to federal courts when they are made by a criminal defendant or his attorney in his defense except in two circumstances: (1) statements which involve administrative matters such as the defendant's identity and (2) statements which involve a deception upon a federal investigative or regulatory agency in a federal civil case.

■ In *Morgan,* 309 F.2d 234, the court upheld the conviction of a person who posed as a lawyer, who practiced in court, and who used a false identity. In discussing whether a defendant "covers up" within the meaning of 18 U.S.C. § 1001 when he pleads not guilty or whether an attorney "covers up" when he moves to exclude hearsay evidence, the D.C. Circuit in *Morgan* noted that "neither Congress nor the Supreme Court intended the statute to include traditional trial tactics within the statutory terms 'concerns' or 'covers up.'" *Morgan,* 309 F.2d at 237. In a later case, the Sixth Circuit held that 18 U.S.C. § 1001 "does not apply to the introduction of false documents as evidence in a criminal proceedings," in the context of a situation in which the defendant testified and produced a false receipt. *Erhardt,* 381 F.2d at 175. The jurists in both *Morgan* and *Erhardt* limited the rationale of their rulings to those situations in which a criminal defendant was making assertions in his own defense in a federal criminal case. Relying on *Morgan,* another circuit has subsequently held that a defendant could be prosecuted under 18 U.S.C. § 1001 for giving a false name to a magistrate. *United States v. Plascencia-Orozco,* 768 F.2d 1074, 1076 (9th Cir.1985). Here the court held that the magistrate's inquiry was a function of his administrative duties, not of his judicial powers. Further the court noted that because the appellant was not under oath at the time he gave a false name, he was not allowed to claim that his action was a trial tactic and that § 1001 was consequently inapplicable. *Plascencia-Orozco* is factually distinguishable from an earlier decision also involving a federal magistrate. *Abrahams,* 604 F.2d 386. Abrahams, like Plascencia-Orozco, was not sworn when he appeared before the magistrate for a bail hearing and removal proceedings. The court in *Abrahams* ruled that "removal proceedings which require a determination by a judicial officer of the identity of the defendant and probable cause to believe that the offense charged has been committed and committed by the defendant is [*sic*] a judicial proceeding." *Abrahams,* 604

F.2d at 393. Further, in the hearing, Abrahams gave an "exculpatory no" response and did not make an affirmative misrepresentation. *Id.* at 394. A truthful answer by Abrahams would have incriminated him of a criminal act. The court held the "exculpatory no" doctrine [2] rendered inapplicable the provisions of 18 U.S.C. § 1001. *Id.* at 395. The case *sub judice* is clearly distinguishable from *Abrahams* because Lawson submitted false documents during a deposition; he did not merely respond "no" to an incriminating question. Further, we find that the submission of false documents is not a bona fide trial tactic which renders the statute inapplicable. Therefore, we find that Lawson's actions fall within the scope of 18 U.S.C. § 1001.

**Materiality**

▓▓▓ Courts throughout the circuits use the same test to determine whether a fact is material for purposes of 18 U.S.C. § 1001: a material fact is one that has a natural tendency to influence or be capable of influencing the government agency or department in question. *United States v. Baker,* 626 F.2d 512 (5th Cir.1980). A false statement need not be made directly to a federal agency to sustain a § 1001 conviction as long as federal funds are involved. *Baker,* 626 F.2d at 514; *United States v. Hooper,* 596 F.2d 219 (7th Cir.1979). The test of materiality is met so long as the false statements or documents were capable of influencing the government function even if the government was not actually influenced. *United States v. Fern,* 696 F.2d 1269, 1273 (11th Cir.1983). Our final determination in this matter is whether the false documents which Lawson submitted during his deposition were capable of influencing U.S. HUD.

▓▓▓ In *Baker,* false time sheets were submitted to a local housing authority. The court determined that the false statements were material because the performance of the program was hindered by faster-than-normal exhaustion of federal funds.

*Baker,* 626 F.2d at 514. Unlike the present case, in *Baker* funds were actually paid over in connection with the false vouchers. In this case pursuant to the annual contributions contract, federal funds were available for distribution pending the outcome of the state court litigation, brought specifically to resolve the amount owed to Lawson by Housing Authority. No money was actually paid to Lawson as a result of his presentation of fraudulent documents. However, under *Fern* this fact is of no consequence; so long as the false statements or documents were capable of influencing the government function, the fact that Lawson produced the fraudulent documents is material. *See Fern,* 696 F.2d at 1273. The false documents had the capacity to influence the amount of money which Lawson received from U.S. HUD through the Housing Authority, had their falseness not been discovered. Consequently, Lawson's presentation of false documents is a material fact.

For the reasons set forth in the foregoing opinion, the judgment of the district court is AFFIRMED.

▓▓▓▓▓▓

**2.** In *Paternostro v. United States,* 311 F.2d 298 (5th Cir.1962), the court first analyzed the history and application of 18 U.S.C. § 1001 in situations in which a defendant or suspect in an interview not initiated by him makes no affirmative representation but merely replies in the negative to a question addressed to him.