United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 2, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-11141
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES E. REYNOLDS,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
(3:03-CR-290-ALM-N)
--------------------

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Charles E. Reynolds appeals his convictions of, and sentence imposed for, violating (1) 18 U.S.C. § 1001(a)(2), which prohibits "knowingly and willfully . . . mak[ing] any materially false, fictitious or fraudulent statement or representation" "in any matter within the jurisdiction of the Executive, Legislative, or Judicial Branch of the Government of the United States"; and (2) 18 U.S.C. § 2 for aiding and abetting false statements to the federal government. More specifically, Reynolds challenges the sufficiency of the

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

government's evidence for two elements of the § 1001 offense, viz., whether the false statements were made "in any matter within the jurisdiction" of the United States Department of Housing and Urban Development ("HUD"), and whether, if so, the false statements were <u>material</u>. Reynolds also challenges the sufficiency of the evidence to sustain the charge of aiding and abetting; and, finally, he challenges his sentence, seeking a re-sentencing in light of <u>United States v. Booker</u>.[1]

As the factual premise underlying the criminal charges against Reynolds arose in the context of HUD's "Direct Endorsement Program," under which HUD agrees in advance to insure loans generated by specifically identified and pre-approved participating lenders, Reynolds contends that even materially false statements are not within the jurisdiction of HUD until HUD actually insures a loan that has already been applied for, granted, and funded by the lender. Thus, argues Reynolds, any materially false statements that he might have made in connection with each loan at issue were made before the loan ever became a "matter within the jurisdiction" of HUD.

Albeit a nice legal argument skillfully presented by able counsel for Reynolds, it misses the mark. In the end we are

---

[1] Reynolds also challenged the sufficiency of the government's evidence that he knowingly <u>presented</u> his false statements to HUD. As presentation is not an element of § 1001(a)(2), however — the statute requires only that the defendant knowingly and willfully <u>made</u> a false statement in the matter within the jurisdiction of an executive agency — we do not address this irrelevant challenge.

2

satisfied that statements of the nature made by Reynolds, or aided and abetted by him, during the application and grant process of loans under the Direct Endorsement Program here at issue are made in connection with matters within HUD's jurisdiction, even if made to the qualified and participating lenders during the pre-approval and authorization process.[2]  Reynolds's jurisdictional argument therefore fails.

Our examination of the record further satisfies us beyond cavil that the evidence adduced in support of the conclusion that Reynolds's statements concerning the income, assets, and creditworthiness of the borrowers under the HUD-insured mortgages here at issue was not only sufficient to support the conclusion that they were matters within the jurisdiction of HUD, but also that they were <u>material</u> both as to his direct violation of the statute and to his aiding and abetting.[3]  We therefore affirm each of Reynolds's convictions.

We also decline to reverse and remand Reynolds's case for re-sentencing on the basis of <u>Booker</u>.  The district court expressly enunciated an alternative basis for imposing these sentences, which

---

[2] <u>See, e.g.</u>, <u>United States v. Lutz</u>, 154 F.3d 581, 587 (6th Cir. 1998); <u>cf.</u> <u>United States v. Ross</u>, 77 F.3d 1525, 1544-45 (7th Cir. 1996); <u>United States v. Montemayor</u>, 712 F.2d 104, 108-09 (5th Cir. 1983).

[3] <u>See</u> <u>United States v. Swaim</u>, 757 F.2d 1530, 1534 (5th Cir. 1985) (defining as material a statement that has "a natural tendency to influence, or [is] capable of affecting or influencing, a government function").

were correctly calculated under the then-mandatory United States Sentencing Guidelines (the "Guidelines").  The sentencer announced that, as a precaution against the possibility that the Guidelines might ultimately be held to be non-mandatory (as they eventually were in Booker), the court would alternatively proceed to exercise its discretion as though operating under non-mandatory Guidelines, and it then imposed precisely the same sentence.  Therefore, under Booker and its progeny, including our post-Booker decisions, we perceive no reason to vacate and remand for resentencing.  AFFIRMED.