[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12728
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-20625-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN OSCAR KALU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 30, 2012)

Before TJOFLAT, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

John Oscar Kalu appeals his convictions and total sentence of 168 months' imprisonment for 1 count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; 2 counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; and 2 counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2.  The court sentenced Kalu to 120 months' imprisonment for Counts 1 through 3 to be served concurrently, to 2 years for Count 5 to be served consecutively to Counts 1 through 3, and to 2 years for Count 6 to be served consecutively to Count 5.  On appeal, Kalu argues that (1) the district court erred in denying his motion to suppress physical evidence and statements, and (2) the district court incorrectly applied the Sentencing Guidelines and improperly imposed an upward variance at sentencing.

I.

Kalu argues that the district court clearly erred in denying his motion to suppress.  Kalu contends that, because the court was presented with conflicting witness testimony, it had to make detailed credibility determinations that it did not believe a witness's claim, which it failed to do.  Further, Kalu contends that the report and recommendation that the district court adopted was contradictory and vague.  Kalu also argues that his motion sought the suppression of incriminating statements that he had made following his arrest, but the court failed to address

2

this argument in any way.

In reviewing a district court's denial of a motion to suppress, we review its findings of fact for clear error and its application of law to those facts *de novo*. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). The voluntariness of a defendant's statement is a question of law. *United States v. Farley*, 607 F.3d 1294, 1326 (11th Cir.), *cert. denied*, 131 S.Ct. 369 (2010). We construe all facts in the light most favorable to the party prevailing in the district court . *Ramirez*, 476 F.3d at 1236. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). We accept the district court's choice of whom to believe "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* (quotation omitted). We defer to a district court's factual determinations unless its understanding of the facts appears to be unbelievable. *Id.* We may affirm the denial of a motion to suppress on any ground supported by the record. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010). Further, we may consider evidence presented at a defendant's trial and are not limited to the evidence introduced at the suppression

3

hearing.  *United States v. Villabona-Garnica*, 63 F.3d 1051, 1056 (11th Cir. 1995).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  In most circumstances, unless there is consent, law enforcement officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment.  *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). There are, however, a number of exceptions to the warrant requirement.  *Id.*  A full search incident to a lawful arrest is one such exception to the warrant requirement.  *United States v. Goddard*, 312 F.3d 1360, 1364 (11th Cir. 2002).  "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial."  *Id.* (quotation omitted).  Thus, "[s]ince the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification."  *Id.*

Another exception to the warrant requirement is an inventory search of a legally impounded vehicle that is conducted pursuant to an established procedure.

4

*South Dakota v. Opperman*, 428 U.S. 364, 372-76, 96 S.Ct. 3092, 3098-3101, 49 L.Ed.2d 1000 (1976).  The government has the burden to show the requirements of an inventory search have been met.  *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992).  An inventory search permits a thorough search of property lawfully in police custody, as long as that search is consistent with the police caretaking function. *United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir. 1985).  To show that an inventory search is lawful, the government must establish, first, that the officers had the authority to impound the defendant's vehicle, and second, that the officers complied with departmental policy in conducting the search.  *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991).  "An inventory search is not a surrogate for investigation, and the scope of an inventory search may not exceed that necessary to accomplish the ends of the inventory." *United States v. Khoury*, 901 F.2d 948, 958 (11th Cir. 1990).  Ordinarily, the prosecution presents evidence at the suppression hearing concerning the standardized procedures limiting the discretion of the investigating officers. When this evidence is presented, "[t]he prosecution assures itself a smoother and surer path when it provides concrete evidence that the inventory search followed a standardized procedure pursuant to regulatory strictures."  However, where law enforcement provides uncontroverted testimony that an inventory search "was

5

routine and required, that is, the search was performed as a matter of course when a vehicle was impounded and the investigating officer was not at liberty to decline to inventory the contents," we have held that the evidence is sufficient to show that an inventory search was properly executed. *Id.*

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The Fifth Amendment's privilege against self-incrimination is fully applicable during a custodial interrogation, but a suspect may still waive his right to remain silent after being properly advised of it, if he does so "voluntarily, knowingly and intelligently." *Farley*, 607 F.3d at 1326 (quotation omitted).  However, voluntary incriminating statements not made in response to an officer's questioning are freely admissible without regard to whether a suspect properly waived his right to remain silent. *United States v. Suggs*, 755 F.2d 1538, 1541 (11th Cir. 1985).

A review of the record shows that any search that occurred at the time of Kalu's arrest was constitutional.  Kalu's main argument is that the district court should have made specific credibility determinations to conclude whether the physical evidence seized was in his vehicle or discovered near Kalu's person.  To the extent evidence was discovered on or near Kalu's person, it occurred incident to a lawful arrest, and to the extent evidence was discovered in Kalu's vehicle, it

6

was discovered during a lawful inventory search of his impounded vehicle. Thus, the search was proper either way, and the district court did not err. Further, contrary to Kalu's position on appeal, the court properly addressed whether Kalu's statement was voluntary. The court cited Officer Surman's unchallenged testimony that Kalu's statements were voluntarily made. Thus, we affirm the court's decision denying Kalu's motion to suppress.

## II.

Kalu argues that, because the district court erred in failing to sustain numerous objections to his guideline calculation and abused its discretion in its decision to upwardly vary from the applicable guideline range, his total sentence of 168 months' imprisonment is unreasonable. First, Kalu contends that the court erred in assessing a two-level enhancement, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice based on his testimony at trial. Next, Kalu argues that the evidence offered by the government did not show that he intended a loss of over $400,000, under U.S.S.G. § 2B1.1(b)(1)(H). Kalu further argues that the court erred in assessing him 1 criminal history point for his prior felony conviction for driving while his license was suspended and sentence of 19 days' imprisonment. Kalu contends that the Guidelines expressly state that a conviction for such a crime, regardless of whether it is a felony or misdemeanor, cannot be used for

7

calculating a criminal history category unless the term of the sentence imposed was at least 30 days' imprisonment or more than 1 year of probation.  Kalu also contends that the court erred in not granting his request for a downward departure under U.S.S.G. § 4A1.3 because his criminal history category of III over-represented the seriousness of his past criminal history.  Finally, Kalu asserts that the court abused its discretion in its 49-month upward variance from the guideline range and imposition of a total sentence of 168 months' imprisonment.

We undertake a two-part inquiry in evaluating a sentence's reasonableness. First, we ensure that the district court did not commit a significant procedural error, such as improperly calculating the guideline range, treating the Guidelines as mandatory, failing to consider  § 3553(a) factors, selecting a sentence based on clearly erroneous factors, or failing to explain adequately the chosen sentence. *United States v. Gonzales*, 550 F.3d 1319, 1323 (11th Cir. 2008).  If there are no such errors, the second step is to review the sentence's substantive reasonableness by "examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question."  *Id.* at 1323-24.

**Obstruction of Justice Enhancement**

We review the district court's factual finding that a defendant obstructed justice only for clear error. *United States v. Tapia*, 59 F.3d 1137, 1144 (11th Cir. 1995). Under the Guidelines, the obstruction of justice enhancement applies where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." U.S.S.G. § 3C1.1. The enhancement should not apply based on false testimony where the testimony at issue is the result of confusion, mistake, or faulty memory. *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993). Enhancing a defendant's sentence because of his perjury does not interfere with his right to testify, because a defendant's right to testify does not include a right to commit perjury. *Id.* at 96, 113 S.Ct. at 1117.

Although concern can arise that courts will enhance sentences pursuant to U.S.S.G. § 3C1.1 as a matter of course whenever the accused takes the stand and is found guilty, this concern is alleviated by the requirement that, if an accused challenges a sentence increase based on perjured testimony, the trial court must make findings to support all the elements of a perjury violation in the specific case. *Id.* at 96-97, 113 S.Ct. at 1118. Thus, we prefer that the district court make specific findings as to each alleged instance of obstruction by identifying the

9

materially false statements individually. *United States v. Dobbs*, 11 F.3d 152, 155 (11th Cir.1994). An enhancement for perjury properly applies where a court makes a determination that the testimony of the defendant on a material matter is false because it is inconsistent as compared to another witness's testimony that the judge determines is truthful. *Id.*

The court did not clearly err in applying U.S.S.G. § 3C1.1 to Kalu's offense level because his testimony was contradicted by overwhelming evidence at trial and shows that he testified falsely on matters material to the government's case against him.

**Loss Amount Determination**

The district court's determination of loss is reviewed for clear error. *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011), *cert. denied*, (U.S. Jan. 9, 2012) (No. 11-7635). The Guidelines do not require a precise determination of loss, and a court "need only make a reasonable estimate of the loss, given the available information." *Id.* (quotation omitted). District courts are in a unique position to evaluate the evidence relevant to a loss determination, and thus, their determinations are "'entitled to appropriate deference.'" *United States v. Bradley*, 644 F.3d 1213, 1290 (11th Cir. 2011) (quoting U.S.S.G. 2B1.1, comment (n.2(c)), *petition for cert. filed*, (U.S. Dec. 12, 2011) (No. 11-844). The

10

court may make factual findings with respect to its loss determination based on "evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." *Id.* (quotation omitted).

A court "may not speculate about the existence of a fact that would result in a higher sentence . . . ." *Barrington*, 648 F.3d at 1197 (quotations omitted). In these circumstances, the government must "establish those facts by a preponderance of the evidence" and "support its loss calculation with reliable and specific evidence." *Bradley*, 644 F.3d at 1290 (quotation and alteration omitted). If a loss exceeds $400,000, 14 levels are added to a defendant's offense level. U.S.S.G. § 2B1.1(b)(1)(H). "[L]oss is the greater of actual loss or intended loss." *Id.* § 2B1.1, comment. (n.3(A)). Intended loss includes "that pecuniary harm that would have been impossible or unlikely to occur." *Id.*, comment. (n.3(A)(ii)).

Here, the court did not clearly err in its determination that a loss of over $400,000 was attributable to Kalu based on the evidence at trial. First, evidence presented at trial showed that an altered check in the amount of $83,625 was deposited in a Bank of America account. Kalu was connected to the fraudulent transfer as demonstrated by photographs depicting him withdrawing $5,500 and $4,500 from the Bank of America account soon after the deposit. Next, evidence showed that $287,000 from Cassel's home equity credit line was deposited by wire

11

transfer into a SunTrust bank account that had Kalu's previous addresses associated with it. Further, Sanon testified that Kalu gave her a check from the SunTrust account to deposit in an account in the name of Stephanie L. Athea. Photographic evidence later depicted Kalu withdrawing $1,000 from the account. Third, evidence showed that $60,000 from Cassel's credit line was deposited by wire transfer into the same Bank of America account that Kalu had withdrawn funds from earlier. The Bank of America account, after all of the fraudulent deposits had been made, including the $83,625 check and the $60,000 wire transfer, had an ending balance of $19.38. These 2 amounts total $143,625, the amount the district court found was the total actual loss. The evidence at trial showed that the SunTrust account, where the $287,000 was deposited on February 20, 2009, was frozen on April 7, after it was determined that the wire transfer was fraudulent. Based on this evidence, it appears that Kalu could not access $287,000 because the account had been frozen. Thus, the $287,000 was not depleted from the Suntrust account because Kalu's fraud was discovered and that intended loss of $287,000 was properly attributable to Kalu. Based on both the actual and intended loss attributable to Kalu, the district court did not abuse its discretion in its application of the 14-level enhancement to Kalu's offense level.

**Criminal History Calculation**

We review a district court's interpretation of the Sentencing Guidelines *de novo*. *United States v. Maxwell*, 579 F.3d 1282, 1305 (11th Cir. 2009). We also review *de novo* its subject matter jurisdiction. *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2005). Courts calculate criminal history points by evaluating each of the defendant's prior convictions according to a variety of factors, including the length of sentence imposed for each conviction. *United States v. Coast*, 602 F.3d 1222, 1223 (11th Cir. 2010). In order to calculate criminal history points, sentences for all felony offenses are counted, regardless of the length of the sentence. U.S.S.G. § 4A1.2(c). Sentences for misdemeanor and petty offenses are counted only if the sentence imposed for the commission of the offense "was a term of probation of more than one year or a term of imprisonment of at least thirty days," or the prior offense was similar to, *inter alia*, "[d]riving without a license or with a revoked or suspended license." *Id.* § 4A1.2(c)(1)(A)-(B); *Coast*, 602 F.3d at 1223. A defendant's criminal history points are used to calculate a defendant's criminal history category. U.S.S.G. § 4A1.1.

A district court may grant a downward departure from a criminal history category, "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal

13

history or the likelihood that the defendant will commit other crimes . . . ." U.S.S.G. § 4A1.3(b)(1). Our review of decisions regarding downward departures is limited because we do not have jurisdiction under 18 U.S.C. § 3742(a) to consider a defendant's appeal of a district court's discretionary decision to not apply a downward departure. *Winingear*, 422 F.3d at 1245-46. This limited review applies so long as the court did not incorrectly believe that it lacked the authority to apply a departure. *Id.* "[W]hen nothing in the record indicates otherwise, we assume the sentencing court understood it had authority to depart downward." *United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006) (quotation omitted). Thus, where the parties do not dispute that the district court recognized its authority to depart downward, we will not review the decision because we lack the jurisdiction to do so. *Winingear*, 422 F.3d at 1246.

The court properly assessed a criminal history point for Kalu's felony conviction for driving with a license suspended because all felonies, regardless of the term of imprisonment, are counted for the purposes of calculating criminal history points, pursuant to U.S.S.G. § 4A1.2(c). Further, we will not consider the district court's decision to deny Kalu's request for a downward departure, pursuant to U.S.S.G. § 4A1.3(b)(1), because we lack jurisdiction to review the court's decision where, as here, the record shows that it was aware of its authority to

14

depart.

## Upward Variance

We generally review the reasonableness of a sentence under a deferential abuse of discretion standard of review. *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007). The district court has wide discretion to decide whether 18 U.S.C. § 3553(a) factors justify a variance. *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 2166 (2011). "A district court's sentence need not be the most appropriate one, it need only be a reasonable one." *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (*en banc*), *cert. denied*, 131 S.Ct. 1813 (2011). We will reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the acts of the case." *Rodriguez*, 628 F.3d at 1264-65 (quotations omitted). The party challenging the sentence has the burden of establishing that the sentence was unreasonable based on the record and the factors set forth in 18 U.S.C. § 3553(a). *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). We will not presume that a sentence outside of the guideline range is unreasonable. *United States v. Mateos*, 623 F.3d

15

1350, 1366 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 1540 (2011).

The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

The level of discussion and detail a judge must give regarding his consideration of the § 3553(a) factors is often up to his own professional judgment, and a full opinion is not required in every case. *Rita v. United States*, 551 U.S. 338, 356, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007). The judge must "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* It is sufficient that the district court considers the defendant's arguments at sentencing and states that it has taken the § 3553(a) factors into account. *United States v. Alfaro-Moncado*, 607 F.3d 720, 735 (11th

16

Cir. 2010), *cert. denied*, 131 S.Ct. 1604 (2011).  However, where a district court varies from the Guidelines, the court "must explain its conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Mateos*, 623 F.3d at 1366 (quotation omitted).  A major variance from the guideline range should be supported by a more significant justification than a minor variance.  *Irey*, 612 F.3d at 1186. Thus, the justification for the variance must be "sufficiently compelling to support the degree of the variance." *Id.* (quotation omitted).  Because economic and fraud-based crimes are "more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quotations and alteration omitted).

Because the court considered the arguments Kalu made at sentencing, considered the 18 U.S.C. § 3553(a) factors, and justified its decision to vary from the Guidelines, we hold that the district court had a reasoned basis for exercising its own legal decision-making authority and did not abuse its discretion in imposing a total sentence of 168 months' imprisonment.  The court determined that Kalu had committed this type of offense before and that he was a "con man." After it expressly stated that it had considered the § 3553(a) factors, it determined that an above the guideline sentence was necessary to deter Kalu from committing such an offense again, as well as necessary to protect the public from his conduct. Because of the nature of Kalu's criminal history, deterrence was a particularly

17

appropriate factor to consider based on the calculated nature of his fraudulent activities. *Martin*, 455 F.3d at 1240. Thus, Kalu failed to carry his burden to show that his sentence was procedurally or substantively unreasonable.

## Conclusion

Based upon the foregoing and our review of the record and the parties' briefs, we affirm Kalu's convictions and total sentence.

**AFFIRMED.**

18